**Felix JELINEK, Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.**

No. 84–5130.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1985.

Decided June 11, 1985.

Fagg, Circuit Judge, filed a dissenting opinion.

Dennis W. Happel, Perham, Minn., for appellant.

Steven Plotkin, Chicago, Ill., for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

Felix Jelinek appeals from a district court order granting summary judgment to the defendant Secretary of Health and Human Services (Secretary). That order affirmed the Secretary's decision to deny Jelinek's application for social security disability benefits. For the reasons set forth below, we reverse the order of the district court, and remand for further proceedings.

Jelinek is a fifty-seven-year-old man with the equivalent of a high school education. He worked for five years in the dry cleaning business and then worked as an electrician at the University of North Dakota for about twenty years. On March 4, 1976, he underwent surgery for lung cancer. Jelinek returned to work several weeks later, but began to experience pain in the area of his incision. He worked part-time off and on for up to eight hours per day but never for a full week. Jelinek finally terminated his employment on May 3, 1977, after he had utilized all of his vacation and sick leave and the University would not allow him to continue working part-time.

Jelinek filed an application for social security benefits on March 27, 1978, alleging that he had become disabled on May 3, 1977, due to the pain resulting from his lung cancer surgery. The Secretary denied this claim initially and on reconsideration. Jelinek requested a hearing before an administrative law judge (ALJ). The ALJ dismissed the case on September 15, 1978, because Jelinek failed to appear for the hearing.

Jelinek filed a second application on March 23, 1979. The Secretary again denied benefits on May 16, 1979. Jelinek filed a third application on December 12, 1980, alleging the same disability as of May 3, 1977. The Secretary also denied this application initially and on reconsideration. Jelinek then sought and received a hearing before an ALJ which was held on November 20, 1981. The ALJ issued a decision on June 30, 1982, denying Jelinek's claim.

The ALJ found that there was no error in the May 16, 1979, denial of Jelinek's March 23, 1979, application, and that Jelinek had failed to present new and material evidence which would justify reopening his claim. Thus, the ALJ concluded that this prior determination could not be reopened.

The ALJ went on to find that Jelinek was not disabled under the Social Security Act, because although he could not return to his former job as an electrician, he retained the residual functional capacity to perform light work. The ALJ also found that his complaints of pain were "not persuasive in light of the medical evidence of record and claimant's activities," and that the alleged pain was not sufficiently severe to prevent Jelinek from engaging in substantial gainful activity. The Appeals Council denied his request for review thereby making the ALJ's decision the final decision of the Secretary.

Jelinek then filed suit in federal district court for the District of Minnesota on July 26, 1982, seeking review of the Secretary's decision. Upon the recommendation of a magistrate, the district court granted summary judgment to the Secretary on May 14, 1984. Jelinek then brought this appeal.

The Secretary argues that the ALJ's prior dismissal of Jelinek's earlier application remains final and that the decision not to reopen the claim is not reviewable under *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Where a claim has been nevertheless reconsidered on the merits, however, it is properly treated as having been reopened as a matter of administrative discretion. *McGowen v. Harris,* 666 F.2d 60, 65–66 (4th Cir.1981). Consequently, the final decision of the Secretary denying such a claim is also subject to judicial review to the extent it has been reopened. *Id.; see also Taylor v. Heckler,* 738 F.2d 1112, 1114–15 (10th Cir.1984); *Tucker v. Schweiker,* 689 F.2d 777, 779 n. 1 (8th Cir.1982). In this case, the ALJ proceeded to reconsider Jelinek's case on the merits immediately after concluding Jelinek's earlier application could not be reopened. Re-

view of the Secretary's final decision on Jelinek's claim is therefore proper.

■ Our task on review is to determine whether the Secretary's decision denying disability is supported by substantial evidence. 42 U.S.C. § 405(g). Persons are considered disabled under the Social Security Act if they have an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

Once claimants show their inability to perform their former job due to their disability, the burden then shifts to the Secretary to prove that they can perform some other kind of substantial gainful activity.[1] *Jackson v. Schweiker*, 696 F.2d 630, 631 n. 1 (8th Cir.1983); *Tucker v. Schweiker*, 689 F.2d at 779.

Jelinek contends that there is not substantial evidence to support the Secretary's finding that he could perform light work. First, he argues that the Secretary failed to give adequate consideration to his complaints of pain. Under the Social Security Act as recently amended by Congress,

> [a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could

reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5).

In *Polaski v. Heckler*, 751 F.2d 943, 950 (8th Cir.1984), we analyzed the legislative history of this statute and concluded that all pain cases in the Eighth Circuit are to be evaluated on the basis of the amended statute, the pain regulation in 20 C.F.R. § 404.1529, and the Secretary's ruling SSR 82–58 as clarified in the settlement agreement set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1321–22 (8th Cir.1984). In particular, adjudicators are to consider the claimant's prior work record and observations by third parties and physicians concerning:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication; and

---

1. Jelinek contended at oral argument that the Secretary failed to acknowledge that the burden shifted to the Secretary to prove that Jelinek could engage in substantial gainful activity once the ALJ found he could not perform his former work as an electrician. We have repeatedly emphasized that ALJs must recognize and use this rule of the burden of proof, and that failure to do so will result in the presumption that the ALJ has incorrectly placed the burden on the claimant. *See, e.g., Wolfe v. Heckler*, 741 F.2d

1084, 1085 (8th Cir.1984); *Parsons v. Heckler*, 739 F.2d 1334, 1339–40 (8th Cir.1984); *Simonson v. Schweiker*, 699 F.2d 426, 428 (8th Cir. 1983). In this case, however, Jelinek did not raise this issue in his brief, nor did he raise it below, and consequently failed to present the issue properly for review under Fed.R.App.P. 28(a). Because we find a remand necessary on other grounds, however, the Secretary shall instruct the ALJ to recognize and use the rule explicitly.

5. functional restrictions.

Further,

[t]he adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id.*

Jelinek complains of chronic pain surrounding the incision in his chest which his doctors have diagnosed as post-thoracotomy neuralgia, or intercostal neuritis. He testified that physical activity aggravates the pain, and results in stiffness through his left side "like a board in there * * * my whole chest * * * just pulled together." Jelinek stated that walking and sitting for extended periods of time also aggravate his pain. His daily activities consist of gardening, tending a small herd of sheep, and making knots. He also goes fishing when someone else goes along to handle the boat. He testified that he can carry a twenty-pound bag of groceries, but moving the bag five or six times increases his pain.

Jelinek occasionally takes aspirin or tylenol for relief. One of his physicians prescribed the pain killers amitriptyline and fluphenazine, which he takes only rarely. Both Jelinek's wife and son corroborated his testimony that he experiences pain and restricted movement.

There are extensive medical reports in the record. Although all of the physicians note that Jelinek suffers pain due to neuralgia, they differ as to the degree or disabling nature of the pain. A March 14, 1978, report by Dr. Ronald Bergom notes that Jelinek

claims to have pain over the posterior shoulder area and the wrist area, but I see no physical findings objectively.

\* \* \* \* \* \*

[Dr. Lelonde, the clinic's thoracic surgeon] felt the patient has a post-thoraco-

tomy neuritis complicated by psychosomatic problems.

\* \* \* \* \* \*

[T]he patient clearly in theory should be able to return to work, but would suggest that he be encouraged to pursue rehabilitation. At this point, he does not have disabling disease.

Jelinek later pursued an outpatient pain rehabilitation program. Neurologist Dr. Charles Anderson stated in Jelinek's discharge summary that "[a]lthough there was no significant change in the patient's magnitude estimate scale of his pain, there was no question that the affective component of his pain had lessened and that he appeared to be more able to manage his pain." In a letter dated August 20, 1980, Dr. Anderson wrote:

Once again, I told the patient that in my opinion it was extremely unlikely that he would actually harm himself if he returned to work but that this might result in some increase in his pain at least temporarily.

In summary, there is no medical contraindication to this patient working. Doctor Fisher and I strongly suspect a psychological deterrent is working here, as the patient seems to demonstrate almost a phobic reaction to the concept of returning to work and how this might result in physical harm.[2]

Jelinek later received a vocational evaluation from the Sister Kenny Institute which concluded that he is "employable only in very selective, part-time positions. This is in relation to his physical disability, limited transferable skills, length of time unemployed, area of residence, age, and his overall lack of physical endurance and tolerance for full-time work." A later report by Dr. James Martins of the Sister Kenny Institute, on October 9, 1981, diagnosed Jelinek's neuralgia as "post surgical nerve causalgia of the 5th through the 8th intercostal nerves * * * with constant and tremendous irritation of these nerves with any

---

**2.** Although Dr. Anderson also "wonder[ed] about a psychological disability," Jelinek has

not raised this issue, and we do not address it.

motion on that side of the body. * * * [F]or all practical purposes a total impairment of his ability to work."

After reviewing the above evidence and the entire record, we conclude that there can be no doubt that Jelinek experiences pain. Moreover, every physician involved with his case has diagnosed neuralgia. Thus, Jelinek's complaints of pain cannot be dismissed as incredible. The issue remains, however, whether Jelinek can perform any substantial gainful activity notwithstanding his pain. Here, we conclude that there is substantial evidence to support the Secretary's decision that Jelinek's pain does not prohibit him from engaging in light work. While Dr. Martins' report would support a finding that Jelinek's pain is disabling, the reports of Doctors Bergom and Anderson clearly support the Secretary's view. Given this conflict in the evidence, it was permissible for the Secretary to find that Jelinek's pain does not prohibit him from performing light work—notwithstanding other factors such as his work history and efforts to seek medical treatment for his pain.

Once Jelinek's capabilities were established, it remained for the Secretary to demonstrate that there are jobs available in the national economy that realistically suit Jelinek's qualifications and capabilities. *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir.1983). In certain cases, the Secretary may meet this burden through use of the Medical-Vocational Guidelines, or "grid," in the Appendix, 20 C.F.R. Part 404, Subpart P, Appendix 2 (1984). Jelinek argues that the Secretary erred by utilizing the Medical-Vocational Guidelines in this case, and in failing to call a vocational expert to address whether there is work in the national economy which Jelinek can perform. Our Court has consistently held that if a claimant has a nonexertional impairment such as pain, "the Guidelines and grid are not controlling and cannot be used to direct a conclusion of disabled without regard to other evidence, such as vocational testimony." *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir.1982). *Accord: Parsons v. Heckler*, 739 F.2d 1334, 1339

(8th Cir.1984); *O'Leary v. Schweiker*, 710 F.2d at 1339; *Nicks v. Schweiker*, 696 F.2d 633, 636 (8th Cir.1983). *See also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.-00(e)(1). When claimants suffer a nonexertional impairment, their characteristics do not identically match those set forth in the guidelines and vocational expert testimony is required for the Secretary to determine whether there are jobs available that a person with the claimant's particular characteristics can perform. *Id.* Here, although there was substantial evidence supporting the Secretary's decision that Jelinek had the capability to perform light work, Jelinek's ability to perform such work is clearly impaired by his pain. The Secretary thus erred in using the guidelines and failing to call a vocational expert. We therefore have no alternative but to remand the case for the Secretary either to award Jelinek benefits or to conduct another hearing and call a vocational expert.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded to the district court with directions to it to remand to the Secretary for action consistent with this opinion.

FAGG, Circuit Judge, dissenting.

I agree with the court that the record contains substantial evidence to support the ALJ's determination that Jelinek has the capacity to engage in light work. However, I dissent from the court's order of remand because I believe the ALJ also properly found that Jelinek's complaints of disabling pain are not fully credible and that his ability to perform light work is unimpaired by pain. Accordingly, the ALJ committed no error by applying the grid and finding Jelinek not disabled.

The ALJ gave specific reasons for rejecting Jelinek's subjective complaints. First, the ALJ considered the objective medical evidence, some of which indicated that Jelinek's physical condition could not reasonably be expected to produce the degree of pain claimed by Jelinek. Second, the ALJ considered Jelinek's extensive range of dai-

ly activities: among other things, he drives an automobile without much difficulty; he can walk a mile, carry groceries, tend a garden, and move bales of hay for his sheep; he operates a tractor for mowing and snow removal on his ten acre homestead—all of which demonstrate physical strength, endurance, and tolerance for the demands of light work.

The backdrop of other evidence also supports the ALJ's determination. Jelinek confided to one rehabilitation specialist that he has little difficulty with his pain unless he overexerts himself. Jelinek completed a three day battery of vocational tests at the Sister Kenny Institute, and, despite his verbal complaints, he exhibited no "observable pain behaviors." Over the course of his pain rehabilitation program, Jelinek's ability to stand improved, and Dr. Anderson concluded that Jelinek had become "more able to manage his pain." Jelinek testified before the ALJ that he could sit for prolonged periods as long as he gets the chance to stretch. Both Doctors Anderson and Bergom concluded that Jelinek could and should go back to work.

Finally, the record discloses reasons for Jelinek's complaints that have nothing to do with any medical impairment. Several doctors noted Jelinek's unfounded fear of heart attack or further injury should he return to work. Jelinek indicated that he is unwilling to relocate from his rural acreage to any place where work is available. Jelinek's private disability benefit also gives him a motive to perpetuate his disability status.

That "there can be no doubt that Jelinek experiences pain," ante at 511, does not answer the question of whether Jelinek suffers from an impairment. This is not a case in which an ALJ ignored or rejected the subjective complaints of pain; instead, the ALJ complied with our directive that he must consider the totality of the evidence. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). The ALJ found from more persuasive evidence in the record that Jelinek's pain was not at a level of severity that would interfere with his ability physi-cally to perform a full range of light work. Because there is substantial evidence for the ALJ's determination that Jelinek does not suffer from a non-exertional impairment which affects his ability to engage in light work, "there was no error in the application of the grid." *Smith v. Heckler*, 760 F.2d 184, 187 n. 6 (8th Cir.1985). Thus, I would affirm the district court's judgment in favor of the Secretary.