**Noel BUTLER, Plaintiff,**

v.

**Otis R. BOWEN, Defendant.**

**No. 86–1686–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Aug. 21, 1987.

Lyle D. Lieberman, Miami, Fla., for plaintiff.

Wendy A. Jacobus, Alan Dagen, Asst. U.S. Attys., Miami, Fla., for defendant.

## AMENDED FINAL ORDER

SPELLMAN, District Judge.

Upon review of the Recommendation of United States Magistrate William C. Turnoff, and upon independent *de novo* review of the record herein, the findings and recommendation of the Magistrate are approved and adopted, and it hereby is

ORDERED AND ADJUDGED that:

1. Defendant's Motion for Judgment on the Pleadings is DENIED;

2. Plaintiff's Motion for Summary Judgment is GRANTED; and

3. The Secretary's determination denying Disability Insurance Benefits to Plaintiff is REVERSED and the cause is REMANDED to the Secretary for the award of a period of disability commencing March 15, 1981.

## REPORT AND RECOMMENDATION

WILLIAM C. TURNOFF, United States Magistrate.

This is a review of a final decision by the Secretary of the Department of Health and Human Services (hereinafter "Secretary") denying Noel Butler's application for Social Security Disability Benefits. The Honorable Eugene P. Spellman, United States District Judge, has referred this matter to the undersigned United States Magistrate for a review of the administrative record and a recommendation regarding its disposition. See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

## PROCEDURAL HISTORY

Plaintiff initially filed applications for Disability and Supplemental Security Income benefits on August 9, 1978 and on January 8, 1980. These applications were denied initially and upon reconsideration. On February 28, 1981, following an administrative hearing before an Administrative Law Judge (hereinafter "ALJ"), the ALJ issued his decision denying benefits. Plaintiff took no further action on these applications.

Subsequently, plaintiff filed another application on August 28, 1981, alleging a disability onset date of March 15, 1981, due to a back impairment. This application was denied on October 7, 1981, and denied upon reconsideration on April 2, 1982.

In the interim, plaintiff filed another application on January 26, 1982, again alleging an onset date of March 15, 1981. This application was denied initially on February 17, 1982, and upon reconsideration on April 19, 1982. Once again, plaintiff took no further action.

The current applications for Disability and Supplemental Security Income (SSI) benefits were filed on December 19, 1984, alleging a disability onset date of September 30, 1982, due to back and knee injuries. These applications were denied initially and upon reconsideration. Plaintiff timely requested a hearing before an ALJ. The hearing was held on August 6, 1985. The ALJ issued his decision denying benefits on December 20, 1985. See *Administrative Record* (hereinafter "R"), pp. 12–23. Therein, the ALJ concluded that plaintiff was not disabled for purposes of disability benefits (Title II of the Social Security Act) "at any time through his date last insured, September 30, 1982." (R., p. 23.) He did, however, conclude that plaintiff was under a disability for purposes of SSI (Title XVI of the Act) "since his date of application, December 19, 1984." (R., p. 23.) See *ALJ's Decision, infra.* Thereafter, the Appeals Council refused to review that decision. Plaintiff seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g).

## FACTS OF RECORD

a. *Testimony*

Plaintiff was born on June 13, 1931. He was 54 years old at the time of the hearing. Plaintiff testified that he had a 6th grade education and could read and write a little. (R., p. 38.) He had worked shampooing rugs, in construction, and as a security guard. (R., p. 39.) Plaintiff's previous work was heavy, with one exception. As a security guard, plaintiff did not have to move or lift heavy equipment; however, he

was required to stand for 8 hours. (R., pp. 40–41.)

Plaintiff stopped working in 1978. While working shampooing carpets, plaintiff fell down a flight of stairs. (R., p. 42.) He injured his back and left knee. Plaintiff testified that he has undergone two back operations as well as two knee operations. (R., p. 43.)

Plaintiff testified that his condition has worsened since the initial ALJ determination on February 28, 1981. His left leg swells often. The left knee cap had been surgically removed, and the knee has been very painful. (R., pp. 44–45.) Plaintiff indicated that he spends most of his time at home, resting in bed. He can only lift up to 5 or 6 pounds. He cannot bend over and touch the floor. (R., p. 46.)

Plaintiff also testified that his prescribed medication does not relieve the pain, but does make him sleepy. (R., p. 48.) He does not drive, nor does plaintiff go out socially. (R., p. 49.)

b. *Medical Record*

Plaintiff was initially treated by Dr. Sherwin Goldman, an orthopedic surgeon. Dr. Goldman treated plaintiff from the day of the accident until September, 1981. Dr. Goldman performed a total patellectomy (knee cap removal) on the left knee. Subsequently, Dr. Goldman removed the remaining tissue and synovium from the left knee. Dr. Goldman opined that plaintiff could not return to his former heavy work.

In May, 1980, plaintiff was hospitalized. Tests revealed a disc abnormality. Back surgery was performed by Dr. Jordan Davis on April 8, 1981. However, after surgery, plaintiff continued to experience pain and discomfort. Once again, he was hospitalized. The second back operation was performed on February 10, 1982. On March 8, 1982, Dr. Davis reported that plaintiff was totally disabled at that time. (R., p. 176.)

Subsequently, on March 29, 1982, plaintiff was examined by Dr. Daniel Bader, a Board-certified consultative neurologist. Dr. Bader reported that plaintiff "is a pleasant, mildly obese, black man in no apparent distress. His blood pressure is 180/100." (R., p. 178.)

Plaintiff was also treated by Dr. Jaime G. Wancier, a neurologist and general surgeon. On October 15, 1985, Dr. Wancier submitted his medical report. He indicated that he treated plaintiff from April 1981 through July 1985. Dr. Wancier diagnosed plaintiff as suffering from lumbar radiculitis and post lumbar laminectomy. He prescribed Tylenol with Codeine for moderate back and leg pain which was credible and consistent with objective clinical findings.

Dr. Wancier opined that plaintiff could perform sedentary work as of November 1984, but that plaintiff could not perform light work. He indicated that plaintiff suffered from pain, muscle spasms, and a limitation of motion of the spine. Further, Dr. Wancier reported that plaintiff could sit or stand on a sustained basis for only one hour, and required complete freedom to rest frequently without restriction. (R., pp. 245–254.)

Finally, on March 20, 1986, Dr. Wancier reported that *as of December 31, 1981*, plaintiff could sit or stand on a sustained basis for only two hours, could lift up to 20 pounds only occasionally, but could not use his feet or hands for repetitive work activity. In addition, plaintiff would need to lie down for substantial periods during the workday. (R., pp. 265–266.)

## ALJ'S DECISION

The ALJ found plaintiff's testimony credible as to his *present* inability to engage in substantial gainful activity. However, he did not find plaintiff's *past* inability to engage in substantial gainful activity fully credible based on a lack of medical evidence.

Interestingly, plaintiff's alleged disability onset date, September 30, 1982, is also the last day of plaintiff's insured status for purposes of disability insurance benefits eligibility. This fact is not disputed. This is significant, inasmuch as a claimant must be of insured status at the time of a disability in order to receive disability insurance benefits.

Based on the finding that plaintiff was not a disabled individual prior to September 30, 1982, the ALJ concluded that plaintiff was not entitled to Disability Insurance Benefits beginning September 30, 1982. However, based on plaintiff's *present* disability, the ALJ concluded that he was eligible and entitled to Supplemental Security Income Benefits beginning December 19, 1984, the date of plaintiff's current application. Plaintiff was not eligible for disability insurance benefits as well, inasmuch as his insured status had expired on September 30, 1982. (R., pp. 12–23.)

## PRELIMINARY MATTER

At first glance, the issue in this case appears to be whether plaintiff was disabled on September 30, 1982, the date he last met the disability insured status. However, initially, a threshold issue must be resolved. Plaintiff maintains that he is entitled to a period of disability commencing on March 15, 1981, a date subsequent to the ALJ's prior denial of February 28, 1981, and prior to the denial of 4/19/82. Essentially, plaintiff is attempting to amend his complaint by setting forth the previously alleged disability onset date of March 15, 1981. In support thereof, plaintiff argues that while reviewing the most recent application for benefits, the ALJ considered and reassessed medical evidence from an earlier period, thereby reopening that prior claim. In further support of his contention that he is entitled to disability benefits beginning March 15, 1981, plaintiff suggests that where there has not been a hearing, and therefore, a failure to arrive at a *judicially* achieved decision, administrative *res judicata* should not attach. Plaintiff accurately points out that no hearing was held relating to either prior application alleging a disability onset date of March 15, 1981. See *Procedural History, supra.* See *Plaintiff's Reply Brief to Defendant's Motion for Summary Judgment*, pp. 1–4.

Defendant, on the other hand, avers that the previous denial, dated April 19, 1982, had effectively precluded plaintiff from successfully alleging an earlier onset date. Furthermore, defendant maintains that in reviewing the present application, the ALJ did not reopen the previous determination. See *Memorandum in Support of Secretary's Decision*, pp. 4, 5.

Significantly, 42 U.S.C. § 405(h) prohibits the Social Security Administration from applying the doctrine of administrative *res judicata* to a prior application in which no hearing took place. *Dealy v. Heckler*, 616 F.Supp. 880 (W.D.Mo.1984), citing *Rush v. Schweiker*, 738 F.2d 909 (8th Cir.1984).

In *Delamater v. Schweiker*, 721 F.2d 50 (2nd Cir.1983), the court held that

[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose. (Citation omitted.) The implication of [this statement] is that if the administrative proceeding has not been of an adjudicative nature, a decision arrived at by the administrative agency cannot have res judicata effect ...

An action taken by an administrative agency to grant or deny a benefit is not an adjudicated action unless the agency has made its decision using procedures substantially similar to those employed by the courts. (Citation omitted.) Use of such "adjudicative procedure ... is necessary to yield an adjudication that is binding under the rules of res judicata." (Citation omitted.)

*Delamater*, 721 F.2d at 53–54.

■ Furthermore, if the Administration either explicitly or implicitly reopens the prior application, then the court may engage in a judicial review of the prior application on the merits. *McGowan v. Harris*, 666 F.2d 60 (4th Cir.1981).

In *Jelinek v. Heckler*, 764 F.2d 507 (8th Cir.1985), the court held that a claim which has been reconsidered on the merits is "treated as having been reopened as a matter of administrative discretion." *Jelinek*, 764 F.2d at 508.

Consequently, the final decision of the Secretary denying such a claim is also

subject to judicial review to the extent it has been reopened. (Citations omitted.) In this case, the ALJ proceeded to reconsider Jelinek's case on the merits immediately after concluding Jelinek's earlier application could not be reopened. Review of the Secretary's final decision on Jelinek's claim is therefore proper.

*Jelinek,* 764 F.2d at 508–509.

Similarly, in the instant case, the ALJ denied plaintiff's request to reopen his prior application. (R., p. 16.) However, the ALJ effectively reopened plaintiff's prior claim by evaluating older medical evidence as part of the process of assessing plaintiff's most recent claim. (R., pp. 17–18.) Specifically, the ALJ described medical treatment dating back to 1978 and sets forth the 1981 medical opinion of Dr. Jordan Davis. The ALJ's comment that this medical evidence was "reviewed for historical perspective" does not negate the fact that he at least implicitly considered this evidence in reaching his decision. *Jelinek, supra; Taylor v. Heckler,* 738 F.2d 1112 (10th Cir.1984); *McGowan, supra; Jacobsen v. Heckler,* Unempl. Ins. Rep., C.C.H. No. 16,671 (D. Minn.1985).

■ This Court, therefore, has jurisdiction to review the merits of the Secretary's decision to deny plaintiff's application for disability benefits based on an alleged disability onset date of March 15, 1981.

## ANALYSIS

As always, it is the function of this Court to determine whether the findings of the Secretary are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Jones v. Heckler,* 702 F.2d 950 (11th Cir. 1983). Substantial evidence means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Boyd v. Heckler,* 704 F.2d 1207 (11th Cir.1983); *Freeman v. Schweiker,* 681 F.2d 727 (11th Cir.1982).

In his decision of December 20, 1985, the ALJ determined that, prior to September 30, 1982, plaintiff had the residual functional capacity to perform light work, and

therefore was not disabled. The ALJ did, however, acknowledge that plaintiff had developed back problems during the relevant period. The medical evidence shows that back surgery was performed by Dr. Jordan K. Davis on April 8, 1981. Subsequently, on February 10, 1982, Dr. James Wancier performed additional back surgery.

However, in reaching his conclusion, the ALJ placed a great deal of significance on the fact that the hospital discharge summary characterized plaintiff as "improved" following the second back surgery. In addition, the ALJ relied on the absence of medical treatment for a period of time following surgery. (R., p. 18, 19.)

This analysis is somewhat short-sighted. This period of time was obviously a period of recuperation. The mere fact that plaintiff was not treated by a physician for a period of 6 months after the second surgery is not substantial evidence that plaintiff had regained the capacity to perform light work. Light work involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities ...

20 CFR § 404.1567(b).

The medical evidence and opinions of plaintiff's treating physicians do not support the conclusion that plaintiff could perform substantially all of those activities during the relevant period. Following the second back operation, Dr. Davis stated that "[h]e is still disabled ..." (R., p. 176.) Moreover, the fact that plaintiff subsequently re-commenced treatment in October 1982 due to severe pain, demonstrates the long-term ineffectiveness of the surgery.

Furthermore, the ALJ seems to ignore the combined impact of the weakness in plaintiff's left leg. On March 29, 1982, one month following the second back surgery, plaintiff was examined by Dr. Bader, a consultative physician. Dr. Bader noted that plaintiff's gait was abnormal with a decided limp favoring the left leg and dragging it behind him. Interestingly, he also noted the presence of pain in plaintiff's lower back and a loss of sensation in the left leg. (R., pp. 178–179.)

Finally, Dr. Wancier reported that as of December 31, 1981, plaintiff could sit or stand on a sustained basis for only two hours. Significantly, Dr. Wancier also stated that plaintiff would need to rest for substantial periods during a normal workday. (R., pp. 265–266.)

It is evident that the ALJ failed to accord the proper weight to the medical assessments of plaintiff's condition provided by the treating physicians. Generally, the findings and opinions of treating physicians are to be accorded substantial weight. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985); *Boyd v. Heckler*, 704 F.2d 1207 (11th Cir.1983). Inasmuch as the ALJ failed in this regard, it is the conclusion of this Court that plaintiff is entitled to disability benefits beginning from the amended onset date of March 15, 1981.

## RECOMMENDATION

In light of the foregoing, it is hereby RECOMMENDED that:

1. Defendant's Motion for Judgment on the Pleadings be DENIED;

2. Plaintiff's Motion for Summary Judgment be GRANTED; and

3. The Secretary's determination denying Disability Insurance Benefits to Plaintiff be REVERSED and that this cause be REMANDED to the Secretary for the award of disability benefits from March 15, 1981.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties may serve and file written objections with the Honorable Eugene P. Spellman, United States District Judge, within ten (10) days after being served with a copy of this Report and Recommendation. See *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982).

Respectfully submitted at Miami, Florida, this 20 day of June, 1987.