**Felix JELINEK, Appellant,**

v.

**Otis BOWEN, Secretary of Health and Human Services, Appellee.**

No. 88–5117.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 18, 1988.

Decided March 23, 1989.

Dennis W. Happel, Perham, Minn., for appellant.

Ted K. Yasuda, Chicago, Ill., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and NICHOL,* Senior District Judge.

LAY, Chief Judge.

This case has a long history. Felix Jelinek previously appealed to this court the denial of disability benefits by the Secretary of Health and Human Services (Secretary). The full background is set forth in our prior opinion. *Jelinek v. Heckler,* 764 F.2d 507 (8th Cir.1985). This court remanded this case to the Secretary to call a vocational expert. Specifically, our remand required the Administrative Law Judge (ALJ) to either award benefits or call a vocational expert to determine in light of the claimant's residual functional capacity (RFC) whether there existed any job in the national economy the claimant could perform. On remand Jelinek produced a voca-

tional expert who testified that in view of Jelinek's specific impairments there was no job available for him to perform. The ALJ called a vocational consultant who testified that there existed jobs which would allow claimant to do light, sedentary work. The ALJ discredited claimant's vocational expert and denied disability. On review, the district court affirmed the ALJ's finding, and disagreed with a magistrate's review of the record which recommended that the ALJ be reversed.

We reverse the order of the district court and direct the Secretary to enter judgment for the claimant finding total disability.

We must affirm the Secretary's finding if substantial evidence on the record as a whole provides support for such finding. *Gavin v. Heckler,* 811 F.2d 1195, 1197–99 (8th Cir.1987). This court may not substitute its judgment for that of the Secretary simply because it might disagree or finds the claimant's proof more credible. *See Clarke v. Bowen,* 843 F.2d 271, 272–73 (8th Cir.1988). On the other hand, the court may reverse the Secretary's finding if it is based on an erroneous view of the law or is not based on substantial evidence on the record as a whole. *Phillips v. Director, Office of Workers' Compensation Programs,* 768 F.2d 982, 984 (8th Cir.1985). Under the latter standard of review, if the Secretary's finding is not supported by any credible evidence or may be viewed as arbitrary and capricious, we need not sustain it.

We find the ALJ's determination to be based on a complete misunderstanding of the law of this case; we find as well the ALJ's assessment of the evidence to be totally deficient ignoring the stated record and arbitrarily rejecting the claimant's vocational expert's reasoned opinion. The ALJ's finding is not based on the choices of conflicting opinion, but focuses primarily on his own injection into the record of a distorted hypothetical question to a government-retained vocational consultant, who at least on this record, presented questionable

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

experience and background to provide an expert analysis. In short, we find the opinion of the ALJ based on the record totally lacking in a reasoned analysis.

The record reveals that every doctor involved in Jelinek's case has diagnosed that he suffers from postthoracotomy neuralgia, or intercostal neuritis. There is no doubt that Jelinek experiences pain. However, Jelinek's physicians disagree as to the degree and the disabling nature of his pain. The Secretary had the burden of establishing that Jelinek could perform substantial gainful activity despite his pain. *Jelinek v. Heckler,* 764 F.2d at 509. In our prior opinion we found that there was "substantial evidence to support the Secretary's decision that Jelinek's pain does not prohibit him from engaging in light work." *Jelinek v. Heckler,* 764 F.2d at 511. However, we found Jelinek suffered from non-exertional impairment and therefore the Secretary erred in using the vocational guidelines to determine whether Jelinek could perform work in the national economy. *Id.* We held that under such circumstances it was incumbent upon the Secretary to call a vocational expert to address whether Jelinek could perform work in the national economy. *Id.*

On remand, the ALJ reasoned that it was the law of the case that the claimant could do light work despite his pain. On this basis, the ALJ held the only remaining issue was what jobs Jelinek could perform notwithstanding his pain. Therefore the ALJ rejected the claimant's limitations and impairment, and the tests that the claimant's vocational expert relied upon. The ALJ clearly misconstrued our determination, as pointed out by both the district court and the magistrate.[1]

As the district court found: "It would be nonsensical for the Eighth Circuit to make an absolute finding that the [claimant] was capable of doing light sedentary work," *Jelinek v. Bowen,* No. 6–82CIV 998, slip op. at 2 (D.Minn. Jan. 20, 1988) (order granting summary judgment), and then remand the case to see if he could do light work. As

the district court makes clear "[t]he vocational expert must [still] be able to find the [claimant's] pain totally disabling, if the pain is indeed disabling." *Id.*

Our prior acknowledgement that claimant may do light work does not rule out a finding that claimant is disabled to the extent that he cannot undertake substantial gainful activity. The issue on remand for the vocational expert to determine in light of the claimant's pain was whether he was so impaired that he could not perform jobs in the national economy. For a vocational expert to make such a determination, the factual disability cannot be ignored; the claimant's vocational tests and his various functional limitations must be evaluated. *Gavin v. Heckler,* 811 F.2d at 1198 n. 3; *Tucker v. Heckler,* 776 F.2d 793, 795–96 (8th Cir.1985). The basic purpose of vocational expert testimony is to determine whether jobs exist for someone with claimant's *precise* disabilities. *Zachary v. Bowen,* No. 88–1164, slip op. at 3 (8th Cir. Jan. 26, 1989). [873 F.2d 1446 (table)] If this were not true, there would have been no necessity for the remand. If we accept the fact of our earlier holding that the claimant could do light, sedentary work as determinative of the case, then the grid would be conclusive as well. However, because the claimant's RFC is impaired by pain, the grid is not determinative and the vocational expert must determine based on the factual record of the pain-impaired RFC whether claimant can carry on substantial gainful activity. *See Gavin v. Heckler,* 811 F.2d at 1198 (8th Cir.1987). As this court stated "[t]he issue remains, however, whether Jelinek can perform any substantial gainful activity notwithstanding his pain." *Jelinek v. Heckler,* 764 F.2d at 511. Thus, it is clear the ALJ, as the district court ruled, misconstrued our prior opinion.

Nevertheless, the district court found the ALJ's legal error was not fatally defective. The district court then ruled, based on substantial evidence on the record as a whole, there was still sufficient proof to uphold the ALJ's finding. This over-

---

1. As the Magistrate's Report and Recommendation states "[t]he taking of vocational testimony

to determine the impact of his pain on his ability to work was ordered."

looks several factors in the ALJ's analysis and handling of the case. First, the ALJ committed legal error by totally ignoring the claimant's vocational expert's findings and analysis. Second, although the government vocational consultant's opinion is to be weighed, the government consultant's testimony when considering the record as a whole demonstrates evidentiary deficiency. Third, the ALJ injected his own hypothetical question which failed to accurately reflect the factual record.

Analysis of this record does not simply provide a conflict of opinion between two vocational experts. If it did, we would uphold the ALJ's finding. Our discussion begins with the comparative background and familiarity with the claimant of the two vocational experts. Claimant's expert witness was a vocational expert from the Sister Kenney Institute in Minnesota. Her name was Susan Boutin. She has a Master's Degree in Rehabilitation Administration from DePaul University, and is nationally certified. Prior to coming to Sister Kenney, Boutin was the Program Manager of a rehabilitation facility for adults in Chicago. She was also a job placement specialist.

Boutin analyzed all of the test studies made of the claimant in 1981 by the Sister Kenney Institute. After completing her tests in 1986 she found the results to be similar to the results of testing performed on the claimant in 1981. Boutin examined the claimant not at his request but on behalf of an insurance company which is paying disability benefits to claimant. She found the claimant to be sincere and she stated "he wanted for us to find something that he could do, that he could—when he did return back to his area, a job that he could do, because he was very very tired of sitting at home, and not having anything that he could do during the day." Record at 300 (Hearing Transcript, May 21, 1986). Boutin subjected the claimant to psychometric testing and tested him for visual perception and mechanical comprehension. She found that he had a significant hearing impairment. She went through his physical limitations and his pain-related disabilities. She evaluated his functional disabilities in light of certain jobs hoping to find something he could do in the national economy. Her conclusion concerning the claimant demonstrates the extensive testing and analysis she performed. She stated:

> I've been an evaluator for six years, and in the course of the six years that I've evaluated people, besides Felix, there have only been two other individuals that I have felt were not able to return to any type of gainful employment. In the type of job that I do, I think that it's real real important to give someone something that they can do, besides sit around in a house for the rest of their lives. And I don't find people, typically, that want to be in that position, anyhow.

> But I was really running up against a brick wall with Felix, and one of the nice things that I have available to me at Sister Kenney is, every Thursday morning I sit down with the staff in the department that I'm in—in Vocational Services—and go over all the results of all the testing that I've done with each of my clients. And I let them know what my thoughts are, and my recommendations, and then they chime in. They give me all their professional recommendations, what they would do.

> \* \* \* \* \* \*

> We went through everything about Felix, and we all came up with the same thing, that, based upon the results of the evaluation, and the skills, and the abilities that I found, he—he does not meet any of the even most minimal requirements to be successful at any employment.

Record at 313–14 (Hearing Transcript, May 21, 1986).

The government called Julie Harren to testify as a "vocational consultant." She did not test or interview the claimant. Harren had read the record, but did not evaluate the tests made by Sister Kenney Institute in either 1981 or 1986 because she stated she was not qualified to do so. Harren has a Master's Degree in Counseling Psychology, and is certified as a Rehabilitation Counselor in Minnesota. She is a vocational counselor with a private firm and has

been a career counselor. She was a disability specialist for the Social Security Administration for four years. She does not have a master's degree in vocational evaluation.

Harren admitted that Ms. Boutin's evaluation of Mr. Jelinek was much more thorough than was her examination. Harren was provided hypothetical questions by the ALJ and on that basis opined that Jelinek could be a salesman in an electrical department of a store, or he could perform small electrical repair, or testing and inspecting electrical components in a factory setting. She suggested he could perform jobs as a message deliverer, machine tender or inspector. She then admitted on cross-examination that "[i]f I'm going back to the summarizing which your expert had described versus the hypothetical [given by the ALJ] * * * it's almost like we're talking about two separate people." Record at 350 (Hearing Transcript, May 21, 1986).

Boutin testified on re-examination following Harren's testimony that all the jobs which Harren testified Jelinek would be capable of doing were jobs that Boutin and staff members at Sister Kenney Institute had initially discussed as appropriate type of positions. Record at 362 (Hearing Transcript, May 21, 1986). "And every one of these jobs we decided were not appropriate, based solely upon [Jelinek]." *Id.* Boutin found the sales position "definitely not appropriate" because, Jelinek would have to be on his feet continually, he would use more than a day each month of sick time, he could not work consecutive days, he would not be able to do simple repetitive tasks using his upper extremities, and he could not reach up to stock shelves.

Boutin also testified Jelinek could not do small appliance repair. He could not do anything repetitive with his right hand without aggravating his condition. Jelinek would need to be able to lie down for periods of rest. *Id.* at 365. Many jobs would not have a place to which he could go, and management would not view this as being medically stable.

Testing and inspecting jobs were found to be inappropriate by Boutin because Jelinek is not capable of holding a clip board or anchoring something with his left hand. He cannot keep that hand on a table while using his right hand. Boutin found that jobs allowing for rotation between sitting and standing would not be sufficient, because Jelinek needs actual periods of rest. *Id.* at 366.

Boutin also found that Jelinek would not be capable of machine tending or clerical routing because he cannot move around for long periods of time or for long distances, and cannot perform repetitive movements of his upper extremities. *Id.* at 368.

The disparity in the thoroughness of the evaluations of the two vocational experts is in itself significant but not necessarily determinative. More important is the fact that the government's expert based her opinion on the ALJ's narrow and misleading hypothetical question. As we stated in *Bradley v. Bowen*, 800 F.2d 760, 763 n. 2 (8th Cir.1986): "This [c]ourt has repeatedly held that vocational testimony elicited by hypothetical questions that fail to relate with precision the physical and mental impairments of the claimant cannot constitute substantial evidence to support the Secretary's decision." *See, e.g., Douglas v. Bowen*, 836 F.2d 392, 396 (8th Cir.1987) (hypothetical which does not precisely state nature of claimant's condition not substantial evidence); *Martin v. Harris*, 666 F.2d 1153, 1155 n.1 (8th Cir.1981) (vocational testimony elicited by hypothetical questions that fail to precisely state claimant's physical and mental impairments not sufficient evidence). The ALJ's question was narrow because it did not include all of the tests and findings of residual functional capacity found by Sister Kenney in 1981, as verified by Boutin in 1986. The ALJ omitted consideration of these findings of impaired disability since he erroneously rejected them as evidence. The question was misleading because the ALJ found that the claimant could be on his feet for six to eight hours a day. The ALJ left out the fact that the claimant could not tolerate long work days and had a low work tolerance level. The ALJ did so on the basis that this low work tolerance level "may" be a result of deconditioning. This is pure speculation and con-

trary to the four days of testing and evaluation performed by Ms. Boutin.

We think the conclusive factor tipping the scales in favor of claimant is the government consultant's candid answer to the following question:

Q: So there isn't any question, assuming that the things * * * are true that [Susan Boutin] observed, he would be unemployable in your mind?

A: Yes.

Record at 351 (Hearing Transcript, May 21, 1986).

The burden was on the Secretary to establish that Jelinek could perform substantial gainful activity notwithstanding his pain. In view of the inadequacies in the testimony of the vocational consultant, as we have outlined above, we conclude that there was insufficient evidence to enable the Secretary to meet his burden.

This court now reverses the district court judgment and orders the Secretary to enter judgment for Jelinek finding total disability.