**Roberto C. MALAVE, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 90 Civ. 6637(RLC).**

United States District Court, S.D. New York.

Oct. 25, 1991.

Wayne G. Hawley, MFY Legal Services (Jill Ann Boskey, of counsel), New York City, for plaintiff.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Linda A. Riffkin, of counsel), New York City, for defendant.

ROBERT L. CARTER, District Judge.

The Secretary of Health and Human Services determined in 1989 that Roberto Malave was disabled as of March 8, 1987, and awarded him Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") benefits from that date forward. Malave seeks review of this decision, asserting that the evidence presented to the Secretary establishes an earlier disability onset date of June 15, 1983.

Malave suffers from a variety of medical and psychological problems. Besides labile hypertension, gastroesophageal reflux, a seizure disorder, and spastic colon (R. 343, 400),[1] he suffers from two congenital diseases: Osler–Weber–Rendu Syndrome, which causes spontaneous internal and mucous-membrane bleeding, and neurofibromatosis, which causes recurrent boils. (R. 34, 271, 400). Further, at least as of July,

---

**1.** R. __ refers to pages in the administrative record filed by the Secretary with his Answer.

1987, Malave was diagnosed as schizophrenic. (R. 242, 348).

In 1983 or 1984, Malave applied to the Secretary for SSI and SSDI benefits claiming these disabling conditions, but his application was denied.[2] Malave reapplied for benefits in 1986, and was once again denied both initially and on reconsideration. In 1987, Malave requested a hearing before an Administrative Law Judge ("ALJ") to review the 1986 determination denying him benefits. Since the request for a hearing was not filed within 60 days of the notice of denial after reconsideration, as required by HHS regulations, 20 C.F.R. § 404.933, § 416.1433 (1991), the ALJ dismissed Malave's request, and the decision on reconsideration became binding.[3]

Malave filed the present application for SSI and SSDI benefits on May 13, 1988, alleging a disability onset date of June 15, 1983.[4] After an initial denial, reconsideration, a hearing before an ALJ, and a ruling by the Appeals Council, the Secretary determined that Malave was in fact disabled, but only as of March 8, 1987. Malave appeals from the portion of this decision finding him not disabled before March 8, 1987. He contends that he was disabled starting on June 15, 1983, and that he is therefore entitled to benefits from that date forward.

This case is now before the court on cross-motions for judgment on the pleadings. The Secretary has filed a purely jurisdictional motion, arguing that the court lacks subject matter jurisdiction over this case. The plaintiff's cross motion disagrees with this contention and argues the merits of Malave's claim.

## I.

The Secretary's jurisdictional argument can be interpreted in two ways. First, it may be interpreted as stating that jurisdiction is lacking in this case because Malave seeks review not of a portion of his successful 1988 application, but rather of his 1986 application that was dismissed in 1987. While the Secretary is quite correct that the court is without jurisdiction to review the 1987 dismissal of Malave's application,[5] he seems to have misunderstood Malave's argument. Malave does not contend, as this interpretation of the Secretary's argument would imply, that the court has jurisdiction directly over the 1987 dismissal. Instead, he asserts that the court has jurisdiction over his 1988 application, which was properly appealed through the administrative review process, and complains that the denial of disability benefits for the period from 1983 to 1987, as part of the adjudication of his 1988 application, was in error. Thus the fact that the court lacks jurisdiction directly over the 1987 decision of the Secretary is irrelevant.

A second interpretation of the Secretary's argument is that administrative res judicata rules bar the court from reviewing Malave's eligibility for benefits for the period adjudicated by his prior applications.

---

2. The record is not clear about when this first application was filed and denied. The record indicates that an application was either filed or denied on July 10, 1984.

3. Malave claimed that he did not file a request for a hearing in a timely fashion because he never received notice of the denial after reconsideration. That notice was mailed to Malave on October 16, 1986, but he had moved to another address shortly before that date. It was not until May 7, 1987, that Malave requested a hearing. Malave told that ALJ that he had not filed a change of address notice in a timely fashion because of mental and physical illness. The ALJ ruled that these allegations were "not supported by the medical evidence in the file as to the claimant's mental difficulties" and found no good cause for the late filing. Tr. 62.

4. Malave also requested reopening of his two prior applications on April 20, 1988, on the basis of new and material medical evidence regarding his mental disability. Affirmation of Jill Ann Boskey, June 17, 1991, Ex. 1.

5. *This court is without jurisdiction to review the 1987 dismissal of Malave's request for a hearing on his 1986 application since that request was not filed within the 60-day time limit prescribed by the regulations.* 20 C.F.R. §§ 404.933(b) [SSDI], 416.1433(b) [SSI] (1991). 42 U.S.C. § 405(g) limits district court jurisdiction to those cases where there has been a hearing before an ALJ and then a "final decision" of the Secretary. Since Malave failed to file his request for a hearing in a timely manner, there was no hearing, and consequently this court is without jurisdiction to review the dismissal.

The argument is that Malave's eligibility for SSI and SSDI benefits prior to 1987 was adjudicated by the Secretary in Malave's 1983/84 and 1986 applications, that those prior administrative denials are now binding on Malave, and that they bar any award of benefits to Malave for that time period. While this argument merits consideration, it must also fail.

The Department of Health and Human Services ("HHS") has instituted a lengthy process for considering applications for SSI and SSDI benefits. The process starts with an initial decision and subsequent reconsideration by HHS staff, provides a hearing before an administrative law judge, and finally allows discretionary review by the Appeals Council. Once this administrative procedure is exhausted, the claimant may institute suit in the United States District Courts. *See* 20 C.F.R. §§ 404.900 *et seq.*, 416.1400 *et seq.* (1991).

■ To prevent this elaborate system of administrative review from being forced to consider repeated claims for the same relief based on the same facts, Congress has set up administrative res judicata rules. These rules provide that once a claim has been adjudicated by HHS and the claimant has pursued all the levels of appeal he wishes, that administrative determination is binding on the claimant as to that particular claim. *See* 20 C.F.R. §§ 404.957(c), 416.-1457(c) (1991). Thus once a claimant has applied for benefits based on one set of facts, and that claim has been adjudicated as far as the claimant chose to pursue it, the Secretary's determination is binding and the Secretary can dismiss any future applications for benefits based on the same facts. The claimant, of course, remains free to pursue new claims.

HHS regulations provide one means of evading the res judicata strictures, however. Within specified time limits after the date of initial determination, claimants may request reopening of their application for good cause shown. 29 C.F.R. §§ 404.988 [SSDI] (four years), 416.1488 (two years) [SSI] (1991). Good cause will be found where (1) there is new and material evidence, (2) a clerical error has been shown, or (3) there was a clear error on the face of the evidence considered in the original determination. 20 C.F.R. §§ 404.989 [SSDI], 416.1489 [SSI] (1991). Once the case is reopened, the earlier determination may be revised. 20 C.F.R. §§ 404.987(a) [SSDI], 416.1487(a) [SSI] (1991).

■ Thus the Secretary has discretion to reopen prior determinations, despite the binding effect earlier administrative adjudications usually have on claimants. In some cases the Secretary orders a prior application reopened. However, courts have declared prior applications to have been reopened even where the Secretary makes no mention of having done so, *Brown v. Sullivan*, 932 F.2d 1243, 1246–47 (8th Cir.1991); *Cleaton v. Secretary, Dept. of Health & Human Servs.*, 815 F.2d 295 (4th Cir.1987); *Purter v. Heckler*, 771 F.2d 682 (3d Cir. 1985); *Taylor for Peck v. Heckler*, 738 F.2d 1112 (10th Cir.1984); *McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir.1981); *Guy v. Sullivan*, 736 F.Supp. 1255 (W.D.N.Y.1990), and in a few cases where the Secretary has explicitly refused to reopen prior applications. *See, e.g., Jelinek v. Heckler*, 764 F.2d 507 (8th Cir.1985).

■ The crucial inquiry is whether, in ruling on the present application, the Secretary addressed the prior decisions and held all or part of the claim barred by res judicata, or whether he proceeded to "review[ ] the entire record in the new proceeding and reach[ ] a decision on the merits." *Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir.1985). If the Secretary reviews the entire record and renders a decision on the merits, the earlier decisions will be deemed to have been reopened, and any claim of administrative res judicata to have been waived by the Secretary. *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir.1987). As one Court of Appeals explained,

even though the subsequent claim be the same for res judicata purposes, if it has nevertheless been reconsidered on the merits to any extent at any administrative level, it is thereupon properly treated as having been, to that extent, reopened as a matter of administrative discretion under 20 C.F.R. § 404.989 (1981)

... In that event a final decision of the Secretary denying the claim is also subject to judicial review to the extent of the reopening, without regard to the expressed basis for the Secretary's denial. *McGowen, supra,* 666 F.2d at 65–66 (citing *Farley v. Califano,* 599 F.2d 606 (4th Cir. 1979)). The same court noted that, while of course the Secretary must look into the facts of a claimant's earlier applications to determine whether there is cause to reopen them or whether the present claim is barred by res judicata, that "threshold inquiry into the nature of the evidence should not be read as a reopening of this claim on the merits." 666 F.2d at 68. It is only where the Secretary does not accord preclusive effect to the earlier decision, and instead considers all the evidence and renders a decision on the merits, that the prior application is deemed to have been reopened.[6]

■ In this case Malave's prior applications were constructively reopened by the Secretary. The ALJ considered the entire record in the case, including medical evidence as far back as 1984 and testimony about periods before then. R. 31–43, 52–58, 110–408. He never mentioned that he was giving preclusive effect to the prior decisions of the Secretary. *See Coup, supra,* 834 F.2d at 317–318 ("At no point ... did the agency rely on administrative res judicata, or state that it was not considering [claimant's] application prior to a particular date."). Instead, the ALJ rendered a decision on the merits of Malave's claims for benefits, finding him not disabled for a portion of the period he claims, and disabled for another portion. In deciding Malave's case in this fashion, the ALJ constructively reopened Malave's prior applications, thereby waiving their preclusive effect. Since the prior cases have been reopened, the entire time period claimed in Malave's 1988 application, *i.e.* from 1983 to 1988, is now before this court. Accordingly, the Secretary's jurisdictional motion for judgment on the pleadings is denied.

## II.

■ Having determined that subject-matter jurisdiction over this appeal exists, the next step is to review the decision of the Secretary. The Secretary's decision remains undisturbed if supported by substantial evidence and in accordance with applicable law and regulations. *See Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991); *Wagner v. Secretary of HHS,* 906 F.2d 856, 860 (2d Cir.1990). Malave's claim that the ALJ erred is based primarily on the treating physician rule. That rule states that a treating physician's opinion as to disability binds the Secretary if it is not contradicted by substantial evidence. *See Rivera, supra,* 923 F.2d at 968 n. 3; *Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988). Even if rendered retrospectively, an uncontradicted opinion by the treating physician is binding where it is the only medical evidence as to disability in the record. *Rivera, supra,* 923 F.2d at 968; *Dousewicz v. Harris,* 646 F.2d 771, 774–75 (2d Cir.1981).

Malave advances two separate grounds for his claim of disability starting on June 15, 1983: his mental illness and his physical illness. The ALJ found Malave not disabled due to any mental illness prior to March 8, 1987. At the hearing, the medical advisor testified that Malave had probably been suffering from schizophrenia since 1977. However, since there were no records of treatment for mental disability until 1987, and since the schizophrenia could come and go during the 1977–1987 period, the medical advisor stated that Malave did not qualify as disabled prior to 1987. R. 46. The ALJ apparently relied upon this recommendation in finding Malave not disabled prior to 1987.

■ Malave argues that the medical advisor's recommendation contradicts the

---

6. Ordinarily a finding of "good cause" is required to reopen a claim after one year from the date of the notice of initial determination. 20 C.F.R. §§ 404.988 [SSDI], 416.1488[SSI] (1991). However, it is not the role of the courts "to determine whether the Secretary had good cause for reopening, for in that respect his decision is not judicially reviewable. Rather, we look at the administrative record to determine whether an explicit or a *de facto* reopening has occurred." *Coup, supra,* 834 F.2d at 317 (citations omitted).

opinion of Malave's treating psychologist, who thought that Malave had been schizophrenic, or at least that he had been suffering hallucinations, since the time of his first suicide attempt in 1977. R. 242, 250. However, while the treating psychologist did opine that Malave was probably schizophrenic to some extent prior to 1987, he never stated that Malave had been disabled by his schizophrenia or hallucinations prior to 1987. It is the treating physician's retrospective opinion as to disability, not diagnosis, that is given weight here. *See Rivera, supra,* 923 F.2d at 968; *Dousewicz v. Harris, supra,* 646 F.2d at 774–75. Since there is no medical evidence or testimony that Malave's psychiatric condition was disabling prior to 1987, the recommendation of the medical advisor, apparently relied upon by the ALJ, is not contrary to the opinion of the treating physician and does not provide a basis for reversing the ALJ's decision.[7]

■ Malave also argued that he was disabled as of June 15, 1983, based on the physical, as opposed to psychological, evidence. The ALJ found the medical evidence insufficient to prove that Malave "was unable to work at any exertional level including that of his past relevant work as a porter" before 1987. R. 19. Once again Malave's claim of error is based on the treating physician rule. Malave's treating physician from July 12, 1984, to May 3, 1985, a Dr. Baskin, stated in a June 23, 1989 letter that he considered Malave to have been "totally disabled" during that period. R. 400. The ALJ stated several reasons for rejecting this conclusion, reasons which must amount to substantial evidence for the ALJ's decision to stand. *See Rivera, supra,* 923 F.2d at 968 n.3 (ALJ can disregard treating physician's opinion only where contradicted by substantial evidence); *Schisler, supra,* 851 F.2d at 47. Since at least two of the stated reasons are either not supported by the record or contrary to established precedents, the ALJ's rejection of the treating physician's opinion is not supported by substantial evidence.

One stated reason for the ALJ's rejection of the treating physician's opinion is an apparent misreading of the record. The ALJ stated that the "claimant did not have a condition likely to cause pain (at least there was no evidence of it)" as part of his evaluation of the treating physician's opinion. R. 19. However, this record is replete with medical evidence of and testimony about Malave's continuing pain. *See* R. 53–54 (boils painful), 152 (abdominal pain); 160 (boils); 400–402 (abdominal pain, pain from boils). At least to the extent that the ALJ's decision to reject the treating physician's determination of disability rested on this stated reason, that rejection is not supported by substantial evidence in the record.

Another of the ALJ's stated reasons for disregarding Dr. Baskin's opinion as to disability was that it was rendered retrospectively, four years after treatment had ceased. The ALJ characterized the opinion as "gratuitous," based on a "tenuous recollection," and "logically improbable given the known facts here." R. 19. However, where a treating physician's retrospective opinion is the only medical evidence in the record regarding disability, "a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Wagner, supra,* 906 F.2d at 862. It is clear from the rest of the ALJ's opinion that he misunderstood the "facts known here," since, as noted above, the ALJ mistakenly stated that the "claimant did not have a condition likely to cause pain (at least there was no evidence of it)." R. 19. Thus the ALJ's conclusion that the treating physician's opinion was "logically improbable" is not backed by "overwhelmingly compelling" reasoning, and is insufficient to overcome the treating physician's opinion.

The only possibly valid reason for rejecting the treating physician's opinion was that Dr. Baskin's finding of disability was

---

7. Of course, the treating psychologist may not have been asked whether he considered Malave to have been disabled prior to 1987, but the fact

remains that the medical advisor's recommendation does not contradict the opinion of the treating psychologist.

inconsistent with his own description of Malave's physical capacity. In addition to stating in a letter his opinion that Malave was disabled during the 1984–1985 period, Dr. Baskin filled out a questionnaire describing Malave's physical capabilities at that time. R. 401. The ALJ asserted that the only part of Dr. Baskin's answers to the questionnaire that would have rendered Malave unfit for sedentary work (and thus disabled) was his opinion that Malave would not be capable of "fine manipulation." Since the ALJ found no corroborating hearing testimony that Malave had difficulty with fine hand movements, he rejected the physician's conclusion. R. 19. While this inconsistency between the treating physician's declaration of disability and his description of the physical capability of the patient is indeed troubling, in light of the other problems with the ALJ's reasoning in rejecting Dr. Baskin's opinion it seems best to remand to the Secretary for reconsideration.

### III.

Accordingly, this case is remanded to the Secretary for reconsideration of whether Malave was disabled from July 12, 1984 to May 3, 1985, taking proper note of the evidence of pain contained in the record, and giving proper deference to the opinion of the treating physicians in the case. If Malave is found to have been disabled for this period, the Secretary should determine whether the record supports the assumption that his physical disabilities continued from May 3, 1985 until March 8, 1987, the date on which he has already been declared disabled due to schizophrenia.

IT IS SO ORDERED.