Charles Arthur SMITH, [SSN: 512–82–1864], Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

No. 96–4138–CV–C–BC.

United States District Court, W.D. Missouri, Central Division.

Jan. 24, 1997.

Gerald V. Liljedahl, Springfield, MO, for plaintiff.

Barbara Brewer Clark, Thomas M. Larson, United States Attorney's Office, Kansas City, MO, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT OF REVERSAL AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LARSEN, United States Magistrate Judge.

This is a proceeding under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and §§ 1381 *et seq.*, in which Charles Arthur Smith (plaintiff) seeks review of the Commissioner's decision denying his application for a period of disability, disability income benefits, and supplemental security income (SSI). This case is before me on cross-motions for summary judgment.[1] I conclude that the record as a whole contains substantial evidence to support the final decision of the Commissioner because (1) the ALJ properly considered the necessary factors and discredited the plaintiff's subjective complaints for legally sufficient reasons, (2) the ALJ properly considered the combined effect of plaintiff's impairments, (3) the ALJ properly determined that plaintiff retains the residual functional capacity to perform his past relevant work, and (4) although the ALJ did not expressly address reopening plaintiff's previous SSI application, he considered plaintiff's disability from its earliest alleged onset date. Therefore, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.

## I. BACKGROUND

Plaintiff's claims for disability income benefits, a period of disability, and SSI were denied both initially and on reconsideration. Following a hearing, an administrative law judge (ALJ) found that plaintiff was not under a disability as that term is defined in the Social Security Act. The Appeals Council of the Social Security Administration subsequently denied plaintiff's request for review, and the ALJ's decision now stands as the final decision of the Commissioner.

Plaintiff alleges he became disabled on August 3, 1992, at age twenty-nine due to hearing problems, dizziness, and a disabling mental impairment. Plaintiff's past relevant work includes employment as a fast food cook, a lumber yard worker, a maintenance man, and a laborer.

## II. STANDARD OF REVIEW

The scope of this court's review is limited by § 205(g) of the Act, 42 U.S.C. § 405(g),[2] which provides that the Commissioner's decision is conclusive if supported by substantial evidence on the whole record. *Jackson v. Bowen,* 873 F.2d 1111, 1113 (8th Cir.1989). This standard of review means that the court must evaluate the entire record, considering not only the evidence that supports the Commissioner's decision but also the evidence that fairly detracts from its weight. *Piercy v. Bowen,* 835 F.2d 190, 191 (8th Cir.1987). The court may reverse the Commissioner's

---

1. Plaintiff's motion is entitled "Plaintiff's Motion for Judgment of Reversal," rather than a motion for summary judgment, but in all other respects is sufficiently similar to a motion for summary judgment in a Social Security case that it is being treated as such.

2. 42 U.S.C. § 1383(c)(3) provides for judicial review of SSI claims as provided in section 205(g) to the same extent as the Commissioner's final determinations under section 205.

decision if it is based on an erroneous view of the law or is not based on substantial evidence on the record as a whole. *Jelinek v. Bowen,* 870 F.2d 457, 458 (8th Cir.1989). If the Commissioner's decision is not supported by any credible evidence or may be viewed as arbitrary and capricious, it need not be sustained. *Id.* The Eighth Circuit has set forth the standard of review as follows:

> The [Commissioner's] denial must be upheld if substantial evidence in the record as a whole supports the conclusion that [the plaintiff] is not disabled. *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 554 (8th Cir.1992). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion. *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992). Thus, "if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision." *Id.*

*Oberst v. Shalala,* 2 F.3d 249, 250 (8th Cir. 1993).

## III. DETERMINATION OF DISABILITY

A person is disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. §§ 404.1505, 416.905. The physical or mental impairment must be of such severity that the plaintiff is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity that exists in the national economy. *Id.*

A five-step sequential analysis is followed in determining whether a plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520; 416.920. The steps are:

> Step One: Is the plaintiff currently engaged in substantial gainful employment? If so, the plaintiff is not disabled and the analysis is ended. If not, the analysis proceeds to the second step.

> Step Two: Does the plaintiff have a severe impairment, that is, an impairment or combination of impairments that significantly limits the ability to do basic work activities? If not, the plaintiff is not disabled and the analysis is ended. If so, then the analysis proceeds to the third step.

> Step Three: Do the plaintiff's impairments meet or equal a listed impairment? If they do, the plaintiff is disabled, without regard to his age, education, and work experience, and the analysis is ended. If the plaintiff has a severe impairment, but a decision cannot be made based on the plaintiff's current work activity or on the medical facts alone, then the analysis proceeds to the fourth step.

> Step Four: Is the plaintiff's "residual functional capacity" such that he is able to do the kind of work he has done in the past? If the plaintiff can do past relevant work, he is not disabled and the analysis is ended. If the plaintiff is unable to do past relevant work, then the analysis proceeds to the fifth step.

> Step Five: Based upon plaintiff's residual functional capacity and his age, education, and past work experience, is he able to do other work? If so, the plaintiff is not disabled. If not, the plaintiff is disabled.

Once the plaintiff demonstrates, under the fourth step, impairments that prevent him from returning to his previous work, the burden shifts to the Commissioner to prove that jobs exist in the national economy that the plaintiff could perform. *Cline v. Sullivan,* 939 F.2d 560, 564 (8th Cir.1991).

The ALJ found that plaintiff suffers from the medically severe impairment of borderline intellectual functioning. However, the ALJ also found that although plaintiff suffers from a medically severe impairment, he retains the residual functional capacity to perform his past relevant work. That is, plaintiff was denied benefits because of the ALJ's findings on the fourth step of the sequential analysis. Since the ALJ found that plaintiff was not disabled at the fourth step, the Commissioner was never faced with the burden of proving that jobs exist which plaintiff could perform.

Plaintiff raises four arguments in his motion for summary judgment. First, he challenges the ALJ's conclusion as to plaintiff's credibility drawn from plaintiff's history of low earnings and frequent job changes. Second, he asserts that the ALJ erred in his finding that plaintiff retained the residual functional capacity to perform his past relevant work. Third, although it is not entirely clear from his brief, he seemingly raises the issue of whether the ALJ properly considered the combined effect of plaintiff's impairments, that is, his ear and speech problems in addition to his borderline intellectual functioning. Fourth, he raises a question regarding the ALJ's failure explicitly to address the issue of reopening plaintiff's prior SSI application.

### A. Plaintiff's Credibility

Plaintiff argues that his poor work history supports his claim that he suffers from a disabling mental impairment. However, the ALJ stated in his opinion as follows:

> In consideration of these factors, the undersigned notes that the claimant has a poor work history, with extremely low earnings ... even during years he does not allege that he was disabled, and frequent changes of employers and occupations.

(Tr. at 15). Based on that and other evidence, the ALJ determined that plaintiff's allegations of totally incapacitation mental and physical impairments were not credible.

Questions of fact, including the credibility of a plaintiff's subjective testimony, are primarily for the Commissioner to decide, not the courts. *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir.1987). The ALJ is required to consider work history as one of the factors in determining credibility, *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984) (subsequent history omitted), and a poor work history may detract from a plaintiff's credibility. *Woolf v. Shalala,* 3 F.3d 1210, 1214 (8th Cir.1993).

Plaintiff argues that his past low earnings support his position that he has had difficulty in finding and keeping jobs because of his mental impairment. Contrary to plaintiff's assertions, the evidence does not support his contention that he changed jobs frequently because of his borderline intellectual functioning. The substantial evidence shows an individual capable of performing low-skill work but who loses his employment for reasons unrelated to his intellectual functioning. Plaintiff testified that he was not working because he could not afford to hire a baby sitter for his infant daughter, not because of his impairments (Tr. at 34). Plaintiff testified that he had in the past worked different jobs for six months to a year and then got laid off because his employers did not "need" him (Tr. at 37). He stated that he worked approximately three months as a lumber yard worker and was then laid off, and he previously worked as a maintenance man putting gas in cars (Tr. at 33). Plaintiff testified that he was let go from a job at Taco Bell when he did not show up for work on a rainy day, explaining that the manager had told him he need not work on rainy days (Tr. at 33–34). Plaintiff reported to his examining psychologist that he had quit a job at Tan–Tar–A after his supervisor required him to operate a jackhammer all day while being paid only minimum wage (Tr. at 133).

Plaintiff's work history was only one factor considered by the ALJ in assessing the credibility of plaintiff's allegations of disability. Consistent with *Polaski,* the ALJ also considered plaintiff's daily activities, such as caring for his infant daughter and running the household while his wife worked; plaintiff's failure to seek medical treatment for dizziness; plaintiff's lack of complaints about hearing loss and dizziness to examining physicians; the lack of objective medical evidence to support the degree of disability plaintiff alleged; and plaintiff's demeanor and conduct during the hearing.

Additionally, the ALJ considered plaintiff's testimony that he quit school, where he was enrolled in special education, in the 10th or 11th grade; that he has worked at various jobs from which he was laid off; and that he has persistent dental problems and ear infections which have gone untreated for lack of money. Plaintiff's father reported that plaintiff's retardation is due to brain damage suffered at birth as a result of a poorly handled delivery. But despite plaintiff's limited intel-

lectual functioning and other medical problems, the record shows that he has worked at numerous jobs subsequent to his quitting school and, obviously, subsequent to his suffering brain damage. When a plaintiff has worked with an impairment over a period of years, it cannot be considered currently disabling without a showing that a significant deterioration has occurred. *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992); *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir.1990). Here, there is no evidence of a significant deterioration. The best that can be said is that there are inconsistencies in the evidence as to whether plaintiff is disabled. If there are inconsistencies in the record as a whole, it is the function of the ALJ to resolve them. *McClees v. Shalala*, 2 F.3d 301, 303 (8th Cir.1993); *Polaski*, 739 F.2d 1320, 1322 (8th Cir.1984).

■ Taken as a whole, the evidence supports the ALJ's finding that plaintiff is able to work, has worked, and has acquired a poor work record for reasons unrelated to his alleged disability. The ALJ found that plaintiff's borderline intellectual ability was a lifelong condition which had not prevented him from functioning in a number of job settings. This finding is supported by substantial evidence on the record as a whole including plaintiff's testimony and his father's statements in the record. Thus, the ALJ properly considered all the evidence and explicitly discredited plaintiff's allegations of disability for legally sufficient reasons.

### B. Effect of Combined Impairments

Plaintiff states in his brief that:

The Plaintiff has a physical impairment of a chronically draining ear. It is admitted that this physical impairment would have only a minimal detrimental effect upon the ability to engage in work like activity. The Plaintiff's main impairment is mental retardation with a verbal IQ of 70 and a full scale IQ of 74 (Tr. 134). There is an expressive language difficulty with decreased bilateral hearing acuity (Tr. 140).

(Pl.'s Brief at 3).

Although I am unclear as to precisely what error plaintiff is asserting here, I will construe this as a challenge to the ALJ's consideration of the combined effect of plaintiff's impairments.

■ When a plaintiff has a combination of impairments, the ALJ is required to consider the combined effect of all impairments in making his determination of disability. 20 C.F.R. §§ 404.1523, 404.1520(a). Sufficient consideration of the combined effects of a plaintiff's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of the plaintiff's complaints of pain and level of daily activities. *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992). " 'To require a more elaborate articulation of the ALJ's thought processes would not be reasonable.' " *Id.* (quoting *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1050, 98 L.Ed.2d 1012 (1988)).

■ In this case, the ALJ discussed plaintiff's hearing loss with its accompanying decrease in expressive speech. The evidence showed that plaintiff was able to hear normal conversational speech. His treating physician reported that plaintiff's ear surgery was successful, although the right eardrum remained scarred and grossly abnormal. The speech pathologist found that although plaintiff suffers from a receptive and expressive language deficit characterized by decreased expressive vocabulary and poor syntactical and grammatical language use, his speech was intelligible and his expressive communication was effective (Tr. at 14, 138–140). As noted by the ALJ, there was no evidence that plaintiff had ever complained to examining physicians of a significant hearing loss. The ALJ explicitly found that plaintiff's ear and speech problems cause no more than slight work-related limitations and are not severe.

The ALJ found no evidence establishing any limitations due to dizziness. He noted, correctly, that there is no evidence that plaintiff reported dizziness to any examining physician or that he sought treatment for dizziness.

Further, the ALJ separately discussed plaintiff's major impairment of borderline intellectual functioning. Plaintiff has a verbal IQ of 70, a performance IQ of 84, and a full-scale IQ of 74. This level of mental functioning does not meet the listing criteria, although the ALJ found it to be a severe impairment. As is required when a mental impairment is present, the ALJ completed and attached the Psychiatric Review Technique Form to his decision. *See* 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Thus, the ALJ properly considered the combined effect of all of plaintiff's impairments.

### C. Residual Functional Capacity

■ Plaintiff contends that because the ALJ ignored the vocational expert's testimony in response to the hypothetical question posed by plaintiff's counsel, his finding that plaintiff retains the residual functional capacity to perform his past relevant work is erroneous.

Plaintiff points to the mental residual functional capacity assessment form completed by the Disability Determinations unit psychologists, (Tr. 100–102), to support his argument that the ALJ improperly assessed plaintiff's residual functional capacity. He complains that the ALJ did not find the same restrictions as those found by the Disability Determinations unit and alleges that the AM completely ignored the vocational expert's opinion as to the unavailability of jobs in the national economy for workers with such restrictions. Plaintiff's counsel set out the restrictions found by the Disability Determinations unit psychologists in his hypothetical question to the vocational expert:

Q. More specifically, let's take a look at the mental RFC that's in the file.... Number two, with an arrow pointing towards moderately; number three, moderate; four, arrow pointing towards moderate; five, moderate; six, seven and ten, arrows pointing towards moderate; moderate on 11; moderate, there's an arrow pointing back; 12, again, arrows pointing towards moderate on 15, 16, 17 and 20. You got it?

A. Uh-huh. Yes.

Q. And then on the rating of impairment severity by the state agencies, restriction daily activity, moderate. Difficulties in social function, moderate, with an arrow pointing towards the other. Deficiencies in concentration, persistence or pace, resulting in a failure to complete task in a timely manner, work settings or elsewhere and that is rated as often. Would that change your preceding answer?

A. Yes, it would.

Q. And how would it change?

A. The basic mental demands for most jobs in the national economy require that a person be able to understand, remember and carry out simple instructions. That they appropriately respond to supervisors, co-workers in the usual work situations and that they deal with changes in a routine work setting. These limitations that you've given me would prevent a person from meeting those basic mental demands, especially the number two, which is the response to supervisors in the usual work situation.

\* \* \* \* \* \*

... Would these restrictions be consistent with a failure to perform routine unskilled entry-level jobs, for short periods of time, as demonstrated in the past?

A. Yes. (Tr. 41–43).

■ In this case, the testimony of the vocational expert was unnecessary because the sequential analysis never progressed to the fifth step. Here, the ALJ found that plaintiff could perform his past relevant work; and, therefore the analysis stopped at the fourth step. It is only when the burden of proving that jobs exist which the plaintiff could perform shifts to the Commissioner at the fifth step of the sequential analysis that vocational expert testimony is necessary. *Johnston v. Shalala,* 42 F.3d 448, 452 (8th Cir.1994). However, although the expert's testimony was not required in this case, it remains a part of the record and must be weighed in determining whether substantial evidence supports the Commissioner's deci-

sion regarding plaintiff's residual functional capacity.

■ It is the ALJ's responsibility to determine the plaintiff's residual functional capacity based on all of the relevant evidence including the medical records, observations of treating physicians and others, and plaintiff's own descriptions of his limitations. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995). A finding as to residual functional capacity need not be based solely on medical evidence. It may be based on other subjective information provided by a plaintiff, if determined to be reliable.

In this case, the vocational expert gave two opposite conclusions as to plaintiff's ability to find and perform work in the national economy. First, the vocational expert testified that plaintiff could work as a laborer or perform unskilled jobs requiring sedentary or light work based on the ALJ's findings as to plaintiff's residual functional capacity. After plaintiff's counsel referred the expert to the mental residual functional capacity assessment form completed by the Disability Determinations unit psychologists, the vocational expert reversed his opinion and testified that plaintiff could not meet the basic mental demands of most jobs in the national economy.

In his decision, the ALJ stated that "[t]here is no evidence that any of these conditions [the plaintiff's mental functioning and speech and hearing problems] have worsened since the years in which he was employed." (Tr. 16). This is not entirely correct. As noted above, the Mental Residual Functional Capacity Assessment and Psychiatric Review Technique forms completed by the psychologists for the Disability Determinations unit (Tr. 100–112) indicated significantly greater restrictions than those found by the ALJ on the Psychiatric Review Technique form (Tr. 18–20). If one accepts those restrictions, the vocational expert's conclusion is that plaintiff now is unable to perform almost any work in the economy (Tr. at 42). If now unable to do almost any work, plaintiff's conditions have indeed worsened.

The ALJ gave no reason in his decision for discounting the residual functional capacity assessment of the agency psychologists or for ignoring the testimony of the vocational expert in this regard. While I find that curious, there is very little relief that can be granted based on this record.

■ Here, there is substantial evidence supporting the AJ's findings that plaintiff's conditions are life-long and have not significantly worsened and that plaintiff can perform work in the national economy. First, plaintiff's father opined that the brain damage occurred during his son's birth and reported nothing about deterioration (Tr. at 89). Second, plaintiff's school records reflected an extremely low percentile ranking on the Differential Aptitude Test administered to plaintiff in 1979 when he was in the ninth grade (Tr. at 146). Third, plaintiff testified that although he was mainstreamed, he had special education teachers (Tr. at 132). Thus, plaintiff's mental retardation dates back at least as early as 1979, after which he shows employment beginning in 1981 and continuing sporadically until 1991 (Tr. at 84).

Dr. Robert Cooper who examined plaintiff on April 16, 1992, stated in a report dated May 1, 1992, (three months before the plaintiff's alleged onset of disability) that plaintiff was not disabled (Tr. at 150). When plaintiff was examined again by Dr. Cooper in April, 1993, after the alleged onset, the doctor wrote:

> I'm unable to perform a psychiatric evaluation. I do not see any psychotic behavior or as a matter of fact any neurotic behavior. I believe he either is just "slow"—borderline MR or that he just has a language disability and a poor environment or family background that did not equip him adequately either emotionally or with necessary social and work skills.

(Tr. at 152).

Plaintiff was also examined in December 1993, after the alleged onset, by psychologist David J. Lutz who reported that plaintiff did not show any affective distress or bizarre behavior and that plaintiff reported no hallucinations, paranoia, delusions, compulsions or obsessions (Tr. at 134). Dr. Lutz also observed that the difference between plaintiff's performance IQ of 84 (low average range)

and his verbal IQ of 70 (borderline range) was significant, concluding that the low verbal IQ might be due to plaintiff's language disorders (Tr. at 134).

Finally, plaintiff offered no evidence that his intellectual functioning had significantly deteriorated.

■ Therefore, substantial evidence exists in the record to support the ALJ's conclusions that plaintiff's difficulty with intellectual functioning is a life-long condition, that there has been no worsening in his condition, and that jobs are available in the economy suitable for plaintiff. As previously discussed, when a plaintiff has worked with an impairment over a period of years, it cannot be considered currently disabling without a showing that a significant deterioration has occurred. *Browning v. Sullivan,* 958 F.2d at 821; *Dixon v. Sullivan,* 905 F.2d at 238.

Finally, plaintiff alleges that the ALJ improperly structured the evidence, by calling and examining the vocational expert, in order to justify his denial of the claim. There is nothing to support such an allegation, other than the vocational expert's testimony itself. Instead, the ALJ performed the required analysis in accordance with *Polaski.* In addition, the ALJ had the vocational expert present at the hearing, and the expert was called and questioned on both direct and cross-examination. If the ALJ had already decided against plaintiff, there would have been no need for the vocational expert to be present at the hearing much less testify. While I agree that the ALJ's failure to discuss this evidence is curious, I do not see anything else that would cause me to question his motives.

Although I might have weighed the evidence differently, I cannot reverse the Commissioner's decision when there is sufficient evidence in the record to support either outcome. *See Browning,* 958 F.2d at 822. Accordingly, I conclude that there is substantial evidence in the record as a whole to support the ALJ's decision that plaintiff retained the residual functional capacity to perform his past relevant work.

**D. Reopening of Previous Application**

Although plaintiff raised the issue of reopening the prior SSI application[3] at the hearing, the ALJ did not specifically address it in his decision. Nevertheless, it is clear that there is no basis for a finding of disability upon which the prior application could be reopened. The same reasons that support a finding that plaintiff was not disabled at the time of the current decision would support a finding that plaintiff was not disabled at the time of the previous application. On plaintiff's prior SSI application, he listed his disability onset date as prior to December, 1992. The ALJ found that plaintiff has not engaged in substantial gainful activity since August 3, 1992, the date the plaintiff alleges he became disabled, and that he was not under a disability at any time through the date of the decision. Therefore, even though the decision was based on the November 9, 1993, application, the date of disability onset was considered from plaintiff's earliest allegation.

## IV. CONCLUSIONS

After reviewing the parties' briefs, the decision of the ALJ, the transcript of the hearing, and the additional medical and documentary evidence, I find that there has been no reversible error at the administrative level and that the record as a whole reflects substantial evidence to support the Commissioner's decision that plaintiff is able to perform his past relevant work. I conclude that (1) the ALJ properly considered the necessary factors and discredited plaintiff's subjective complaints for legally sufficient reasons, (2) the ALJ properly considered the combined effect of plaintiff's impairments, (3) the ALJ properly determined that plaintiff retains the residual functional capacity to perform his past relevant work, and (4) although the ALJ did not expressly address reopening plaintiff's previous SSI application, he considered

---

**3.** Plaintiff filed an SSI application on December 10, 1992. This application was denied initially on January 21, 1993, and not appealed further. Plaintiff filed his current applications on November 9, 1993, within one year from the date of the prior denial. Social Security regulations allow administrative reopening of a prior determination within one year for any reason. 20 C.F.R. § 416.1455.

plaintiff's disability from its earliest alleged onset date.  Therefore, it is

ORDERED that plaintiff's motion for judgment of reversal is denied.  It is further

ORDERED that defendant's motion for summary judgment is granted.