Jessie HART on Behalf of David THOMAS [SSN: 499–90–3191] Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

No. 96–0015–CV–W–BC.

United States District Court, W.D. Missouri.

Feb. 21, 1997.

Daniel J. Devine, Kansas City, for Plaintiff.

Thomas M. Larson, U.S. Attorney's Office, Kansas City, for Defendant.

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LARSEN, United States Magistrate Judge.

This is a proceeding under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, in which Jessie Hart O/B/O David Thomas (plaintiff) seeks review of the Commissioner's decision denying Thomas' application for supplemental security income childhood disability benefits. This case is before me on cross-motions for summary judgment. I conclude that the record as a whole contains substantial evidence to support the Commissioner's decision that plaintiff is not disabled within the meaning of the Social Security Act because (1) the changes in the law as a result of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 render moot the issue of whether the Administrative Law Judge (ALJ) properly determined plaintiff's limitations concerning the individualized functional assessment (IFA), and (2) the ALJ properly determined that plaintiff's functional limitations do not meet the criteria listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, Part B. Therefore, plaintiff's motion for summary 20/25 judgment will be denied and defendant's motion for summary judgment will be granted.

## I. BACKGROUND

Jessie Hart, on behalf of her minor son, David Thomas, applied for supplemental security income childhood disability benefits in 1993. Plaintiff's claim was denied both initially and on reconsideration. Following a hearing, the ALJ found that plaintiff was not under a disability as that term is defined in the Social Security Act. The Appeals Council of the Social Security Administration subsequently denied plaintiff's request for review, and the ALJ's decision now stands as the final decision of the Commissioner.

Plaintiff alleges he has been disabled since birth due to a learning disability and asthma. Plaintiff's date of birth is November 7, 1985. He was seven years old when the initial application was filed. He was nine years old when the ALJ rendered his decision on December 30, 1994.

## II. ISSUES

The issues are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the ALJ's findings of fact are supported by substantial evidence on the record as a whole.

## III. STANDARD OF REVIEW

■ The scope of this court's review is limited by § 205(g) of the Act, 42 U.S.C. § 405(g),[1] which provides that the Commissioner's decision is conclusive if supported by substantial evidence on the whole record. *Jackson v. Bowen,* 873 F.2d 1111, 1113 (8th Cir.1989). This standard of review means that the court must evaluate the entire record, considering not only the evidence that

---

1. 42 U.S.C. § 1383(c)(3) provides for judicial review of SSI claims as provided in section 205(g) to the same extent as the Commissioner's final determinations under section 205.

supports the Commissioner's decision but also the evidence that fairly detracts from its weight. *Piercy v. Bowen.* 835 F.2d 190, 191 (8th Cir.1987). The court may reverse the Commissioner's decision if it is based on an erroneous view of the law or is not based on substantial evidence on the record as a whole. *Jelinek v. Bowen,* 870 F.2d 457, 458 (8th Cir.1989). If the Commissioner's decision is not supported by any credible evidence or may be viewed as arbitrary and capricious, it need not be sustained. *Id.* The Eighth Circuit has set forth the standard of review as follows:

> The [Commissioner's] denial must be upheld if substantial evidence in the record as a whole supports the conclusion that [plaintiff] is not disabled. *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 554 (8th Cir.1992). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion. *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992). Thus, "if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision." *Id.*

*Oberst v. Shalala,* 2 F.3d 249, 250 (8th Cir. 1993).

## IV. DETERMINATION OF DISABILITY

This case is unusual in that during its pendency, the law governing the definition of disability for childhood supplemental security income disability benefits changed. The ALJ's decision, based on the law then in effect, was rendered on December 30, 1994. Plaintiff filed his motion for summary judgment with this court on August 7, 1996. On August 22, 1996, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193, 110 Stat. 2105, was enacted, which changed the law for determining disability in childhood disability SSI cases. The changes in the Personal Responsibility and Work Opportunity Reconciliation Act are applicable to plaintiff's case. The Commissioner discusses the changes applicable to this case in her motion for summary judgment filed on November 22, 1996.

Plaintiff was given twenty days after the filing of the Commissioner's brief in which to file a reply but failed to do so. I therefore conclude that he does not dispute the position taken by defendant on this issue.

### A. Effective Date of New Law

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193, 110 Stat. 2105, provides that the changed standards enacted for defining and determining childhood disability for SSI shall apply to cases such as this where judicial review was pending on the date of enactment. On the subjects of SSI childhood disability definitions and determinations, Sections 211(d)(1)(A)(i) and (ii) provide:

> (i) IN GENERAL—The provisions of, and amendments made by, subsections (a) and (b) of this section shall apply to any individual who applies for, or whose claim is finally adjudicated with respect to, benefits under title XVI of the Social Security Act on or after the date of the enactment of this Act, without regard to whether regulations have been issued to implement such provisions and amendments.
>
> (ii) DETERMINATION OF FINAL ADJUDICATION—For purposes of clause (i), no individual's claim with respect to such benefits may be considered to be finally adjudicated before such date of enactment if, *on or after such date, there is pending a request for either administrative or judicial review* with respect to such claim that has been denied in whole . . .

Pub.L. No 104–193, 110 Stat. 2105, 2189–90 (emphasis added).

### B. Prior Law

To understand the implications of the Personal Responsibility and Work Opportunity Reconciliation Act, it is helpful to review the law that was in effect when the ALJ made his decision here.

Under the old law, an adult was considered disabled under Title XVI "if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual under age 18, that is, a child, was considered disabled "if he suffers from any medically determinable physical or mental impairment *of comparable severity* [to that of an adult]." *Id.* (emphasis added).

The Commissioner implemented a five-step sequential analysis for determining whether an adult was disabled, which is still applicable to adult SSI disability cases. See 20 C.F.R. § 416.920. The steps are:

Step One: Is plaintiff currently engaged in substantial gainful employment? If so, plaintiff is not disabled and the analysis is ended. If not, the analysis proceeds to the second step.

Step Two: Does plaintiff have a severe impairment, that is, an impairment or combination of impairments that significantly limits the ability to do basic work activities? If not, plaintiff is not disabled and the analysis is ended. If so, then the analysis proceeds to the third step.

Step Three: Do plaintiff's impairments meet or equal a listed impairment? If they do, plaintiff is disabled, without regard to his age, education, and work experience, and the analysis is ended. If plaintiff has a severe impairment, but a decision cannot be made based on plaintiff's current work activity or on the medical facts alone, then the analysis proceeds to the fourth step.

Step Four: Is plaintiff's "residual functional capacity" such that he is able to do the kind of work he has done in the past? If plaintiff can do past relevant work, he is not disabled and the analysis is ended. If plaintiff is unable to do past relevant work, then the analysis proceeds to the fifth step.

Step Five: Based upon plaintiff's residual functional capacity and his age, education, and past work experience, is he able to do other work? If so, plaintiff is not disabled. If not, plaintiff is disabled.

Obviously, the vocational factors used to evaluate an adult plaintiff's disability in steps four and five have no relevance to a child. Therefore, initially, only steps one through three were used in evaluating disability for a child. Essentially, the process for determining disability in a child was as follows:

Step One: Is the child engaging in substantial gainful activity? If so, the child is not disabled, and the analysis is ended. If not, then the analysis proceeds to the next step.

Step Two: Does the child have a severe impairment, that is, an impairment or combination of impairments that significantly limits his ability to function independently, appropriately, and effectively in an age-appropriate manner? If not, then the child is not disabled and the analysis is ended. If so, then the analysis proceeds to the third step.

Step Three: Do the child's impairments meet or equal a listed impairment? If they do, the child is disabled. If they do not, the child is not disabled. Either way the analysis is ended.

In 1990, the Supreme Court held that under the "comparable severity" language of the statute at that time, the Commissioner had to make an individualized functional capacity determination for a child who was not presumptively disabled under steps one through three. *Sullivan v. Zebley,* 493 U.S. 521, 536–37, 110 S.Ct. 885, 894–95, 107 L.Ed.2d 967 (1990). In effect, the Commissioner had to make a functional determination for such a child analogous to the individualized vocational assessment made for an adult under steps four and five of the sequential analysis. *Id.*

Subsequently, the Commissioner promulgated regulations which required that if a child's impairment was determined to be severe but did not meet or equal in severity any of the listings,[2] an individualized functional assessment was done. 20 C.F.R. § 416.924d(a). The regulations required assessments to include analysis in specific areas or "domains of development or functioning," such as cognition, communication, motor abilities, social abilities, and personal/behavior patterns. *Id.* § 416.924d(c). Depending upon the child's age, various domains were analyzed, and the degree of

---

2. 20 C.F.R. Part 404, Subpart P, Appendix 1.

limitation and number of domains in which limitations were found determined whether the child was disabled within the meaning of the Act. *See generally id.* §§ 416.924d, 416.924e. The individualized functional assessment thus became the fourth step in the sequential analysis for childhood disability SSI benefits. Under the law in effect when the ALJ made his decision, the third and fourth steps of the childhood disability analysis were:

> Step Three: Do the child's impairments meet or equal a listed impairment? If they do, the child is disabled and the analysis is ended. If they do not, the analysis proceeds to the fourth and final step.

> Step Four: Is the child's "individualized functional assessment," considering the impact of the child's impairments on his overall ability to function independently, appropriately, and effectively in an age-appropriate manner, such that the child's impairments are of comparable severity to an impairment or impairments that would disable an adult? If so, the child is disabled. If not, the child is not disabled. In either event, the analysis is ended.

Here, the ALJ found that plaintiff was not presumptively disabled under steps one through three of the sequential analysis, and proceeded to do the individualized functional assessment. The ALJ then found that plaintiff did not meet the necessary degree of limitations in the required number of domains to be disabled within the meaning of the Act.

The new law, however, changes the process for determining childhood disability as it pertains to SSI benefits.

### C. New Law

The Personal Responsibility and Work Opportunity Reconciliation Act eliminates the "comparable severity" standard described above. It provides that 42 U.S.C. § 1382c(a)(3) is amended by striking the comparable severity language dealing with individuals under age 18 and adding the following definition of childhood disability:

> An individual under the age of 18 shall be considered disabled for the purposes of the title if that individual has a medically de-

terminable physical or mental impairment, which results in *marked and severe* functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Pub.L. No. 104–193, § 211(a)(4)(C)(i), 110 Stat. 2105, 2188 (emphasis added).

The new law further directs that:

> The Commissioner of Social Security shall discontinue the individualized functional assessment for children set forth in sections 416.924d and 416.924e of title 20, Code of Federal Regulations.

Pub.L. No. 104–193, § 211(b)(2), 110 Stat. 2105, 2189.

Congress has decided that the definition of disability as it relates to children seeking SSI disability benefits should be limited to the first three steps of the sequential analysis. This is made clear in the House conference report on the law prior to enactment. Concerning childhood SSI disability benefits, the report states:

> The conferees intend that only needy children with *severe* disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term *"severe"* in its common sense meaning.

142 Cong. Rec. H8829–92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104–725 (July 30, 1996) (emphases added).

Now, under the new law, there are only three steps in the sequential analysis for a child seeking SSI disability benefits, effectively returning the Commissioner's process for evaluating disability in children to that employed prior to 1990 when the Supreme Court decided *Sullivan v. Zebley*. With the statutory abolition of the comparable severity standard, the Commissioner's three-step procedure for the evaluation of childhood disabil-

ity for SSI now meets the statutory requirements, in contrast to the pre-*Zebley* period. Consequently, under the new law, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments.

In this case, based on the prior law, the ALJ determined that plaintiff did not meet the criteria of the individualized functional assessment for a finding of disability and denied plaintiff benefits as a result of the determination at the fourth step of the sequential analysis for childhood disability benefits. It is the ALJ's findings at step four that plaintiff challenges. Plaintiff states in his motion: "In particular, the plaintiff believes there is not substantial evidence to support the finding that Mr. Thomas' impairments are not *comparable in severity* to impairments which would disable an adult." (Pl.'s Mot. at 15) (emphasis added). Plaintiff then goes on to challenge the ALJ's determination of his restrictions in the various domains included in the individualized functional assessment. The remainder of plaintiff's brief deals entirely with the various domains and the necessary degree of limitation required to support a finding of disability under the individualized functional assessment analysis.

■ However, this issue is now irrelevant because of the changes in the law. Since there is no fourth step to be applied to plaintiff's case, the ALJ's findings on the individualized functional assessment are no longer dispositive. Therefore, I conclude that plaintiff's claims regarding the ALJ's errors in the determination of his individualized functional assessment are effectively rendered moot by the enactment of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996. The only remaining question is whether plaintiff's functional limitations meet or equal the listing criteria.

### D. Listing Criteria [3]

In step two of the sequential analysis, the ALJ found that plaintiff suffers from the following medically determinable severe impairments: asthma since infancy requiring no medication in 1994,[4] a history of chronic bronchitis, and learning disabilities primarily affecting the language areas, particularly reading and writing. As the ALJ noted, these disabilities meet the definition of "severe" as defined in the initial screening process, that is, minimal.[5] At step three, the ALJ found that plaintiff's impairments did not meet or equal any of the listings. See 20 C.F.R., Part 404, Subpart P, Appendix 1, Part B (children).[6]

■ Although under the new law individualized functional assessments are no longer used to determine whether a child meets the SSI disability requirements, an assessment of functioning in various areas may still be used to determine if a child meets the listing criteria for mental impairments at step three of the sequential analysis. Plaintiff challenges the ALJ's findings that his impairments do not meet or equal any of the listed impairments, (Pla.'s Mot. at 15), but does not specifically address the issue in his brief. Plaintiff does, however, dispute the ALJ's findings regarding his functional limitations on the individualized functional assessment, as discussed above. Since limitations in functioning could also be used to support a finding of disability at the third step, even though they are no longer applicable in

---

**3.** The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. Most of the listed impairments are permanent or expected to result in death, or a specific statement of duration is made. For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months.
20 C.F.R. § 416.925(a).

**4.** The ALJ's decision was made on December 30, 1994. The hearing was held on August 10, 1994.

**5.** See 142 Cong. Rec. H8829–92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104–725 (July 30, 1996), discussed *supra*, regarding the different meanings of "severe."

**6.** Part B of the Listing of Impairments pertains to children and contains additional medical criteria that only apply to the evaluation of impairments in those under age 18. 20 C.F.R. § 416.925(b)(2).

terms of the individualized functional assessment, I will consider the question of whether plaintiff's functional limitations meet the listing criteria despite plaintiff's lack of specific argument on this point. It should be noted that the standards used in determining disability under the listing criteria regarding functional limitations differ from those of the individualized functional assessment.[7]

Listing 112.05, Mental Retardation, is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R., Part 404, Subpart P, Appendix 1, Part B, Listing 112.05. Among the criteria that may be used to meet this listing is the provision that a child in the plaintiff's age subcategory (age 3 to the attainment of age 18) may be found disabled if his mental impairment results in "marked" limitation of at least two of four functions, similar to the domains used in the individualized functional assessment. *Id.* at Listing 112.05 A, Listing 112.02 B.2.a.d. These four areas are: (1) cognitive/communicative function, (2) social functioning, (3) personal/behavioral function, and (4) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner. *Id.* at Listing 112.02 B.2.a.-d. The term marked "means more than moderate but less than extreme." *Id.* at Listing 112.00 C. The degree of limitation must be "such as to interfere seriously with the ability to function ... independently, appropriately, effectively, and on a sustained basis." [8] *Id.*

7. For plaintiff's age subcategory, five areas of functioning and one area of behavior were assessed during the individualized functional assessment. 20 C.F.R. § 416.924c(e). These areas on the IFA are often referred to as "domains" of functioning. In contrast, the listing criteria delineate these generally as "areas," further defined in terms of "function," e.g., "social function." 20 C.F.R., Part 404, Subpart P, Appendix 1, Part B.

8. The required degree of limitation necessary to meet the listing under this criterion may be gauged by comparison with the alternate provisions for meeting the listing which are: (1) mental incapacity evidenced by dependence upon others for personal needs grossly in excess of age-appropriate dependance and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded,

Thus, if plaintiff suffers from a marked limitation in at least two of the four functional areas evaluated, he would meet the listing criteria and qualify for childhood SSI disability benefits. Significantly, the ALJ did not find plaintiff's limitations to be marked in any of the domains assessed in the individualized functional assessment. Although there were six separate domains assessed in the IFA, only four areas are used in the listing. Two of the six domains assessed in the IFA, i.e., cognitive and communicative functioning, are combined in the listing criteria, and a sixth domain, i.e., motor functioning, is simply not evaluated under the listing criteria. The ALJ's findings on the IFA are discussed below under the appropriate area of function corresponding to the listing criteria.

1. Cognitive/Communication Function

The ALJ found less than a moderate impairment in the cognitive domain. He also found plaintiff had less than a moderate impairment in communicative functioning. Even putting the two together, as required in the joint communicative/cognitive function used in the listings, would result in less than a moderate impairment.

Finally, if one uses the ratings provided by the medical consultant, as plaintiff argues should have been used by the ALJ, plaintiff would have only a moderate impairment in cognitive functioning and less than a moderate impairment in the communicative function based on the individualized functional assessment dated August 11, 1993.[9] (Tr. 65).

(2) a valid verbal, performance, or full scale IQ of 59 or less, (3) a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of function, (4) a valid verbal, performance or full scale IQ of 60 through 70 resulting in marked impairment in either social function, personal/behavioral function or concentration, persistence or pace, or (5) marked limitation in the cognitive/communicative function with another physical or mental impairment imposing additional and significant limitations of function. Listing 112.05 B–F.

9. An IFA completed on July 16, 1993, by J. Edd Bucklew, Ph.D, Medical Consultant, found no evidence of limitation in the cognitive development/function, no evidence of limitation in the communicative development/function, no evi-

Plaintiff has attended regular school classes and has been promoted each year. Despite being classified as learning disabled and being considered for special education classes by one school district, plaintiff achieved grades of A's, B's, and C's during the 1993–1994 school year. Plaintiff's mental processing score on the Kaufmann Assessment Battery for Children was within the average range. His test results on the Iowa Basic Skills Test ranged from mid-average in math concepts, math problems, computation, spelling, and listening skills, to mid-below average in word analysis, vocabulary, reading, and language usage. Plaintiff's composite score placed him in the seventeenth percentile, which is below average.

As to language, when plaintiff's test results on the Clinical Evaluation of Language Fundamentals were scored referencing the Black English dialect, his total language score placed him within the normal range. His receptive language score was within the normal range when scored using both standard English and Black English; and when scored referencing the Black English dialect, his expressive language score was only slightly below the normal performance. Although plaintiff scored below average on one subtest, he scored above the mean on another. The test administrator indicated that plaintiff had some mild difficulties in social language, but that "communication with others will probably be achieved successfully." (Tr. at 79).

I conclude there is substantial evidence on the record as a whole that plaintiff's limitations in the cognitive/communicative function do not meet the marked and severe criteria as established by the recently enacted law.

### 2. Personal/Behavioral Function

The AIJ did find that plaintiff was moderately limited in the personal/behavioral domain. However, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 also changed the evaluation of this function under the listings. Public Law 104–193 provides in part that:

dence of limitation in the motor development/function, less than moderate limitation in the social development/function, less than moderate limitation in the personal/behavioral devel-

The Commissioner of Social Security shall modify sections 112.00C.2. and 112.02B.2.c.(2) of appendix 1 to subpart P of part 404 of Title 20, Code of Federal Regulations, to eliminate references to maladaptive behavior in the domain of personal/behavioral function.

Pub.L. No. 104–193 § 211(b)(1), 110 Stat. 2105, 2189.

Under the former, less restrictive standard, the ALJ found only a moderate limitation in this domain. Moreover, the elimination of any reference to maladaptive behavior as a measure of the degree of limitation in this domain means that, using current law, the ALJ probably would not have found a moderate limitation. In his findings in this domain, the ALJ specifically referred to such maladaptive behavior as the ratings on the Behavior Evaluation Scale completed by plaintiff's classroom teacher which show subscale scores in interpersonal difficulties and inappropriate behavior. The ALJ also referred to the testimony of plaintiff's mother in which she described plaintiff as "aggressive." Plaintiff, however, does not dispute the ALJ's finding in this domain.

### 3. Social Function

In the social function domain, the ALJ found that plaintiff had less than a moderate limitation. The plaintiff does not dispute the ALJ's findings in this domain.

### 4. Concentration, Persistence, and Pace

The ALJ found plaintiff has less than a moderate deficit in the area of concentration, persistence, or pace. Plaintiff argues that he has at least a moderate deficit in this area. Even assuming plaintiff has a marked limitation in this function, there is substantial evidence in the record to support the ALJ's findings that plaintiff has less than marked limitations in at least the three other functions. Since plaintiff must have marked limitations in at least two of the four functions, plaintiff fails to meet the listing criteria.

I conclude therefore that the record as a whole contains substantial evidence to sup-

opment/function, and less than moderate limitation in concentration, persistence, and pace. (Tr. at 55–57).

port the Commissioner's decision that plaintiff's functional limitations do not meet or equal the criteria of a listed impairment.

## V. CONCLUSIONS

After reviewing the parties' briefs, the decision of the ALJ, the transcript of the hearing and the documentary evidence, I agree with the Commissioner and find that there has been no reversible error at the administrative level. I conclude that the record as a whole contains substantial evidence to support her decision that plaintiff is not disabled within the meaning of the Social Security Act because (1) the changes in the law under the terms of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 render moot the issue of whether the ALJ properly determined plaintiff's limitations in regard to the individualized functional assessment and (2) the ALJ properly determined that plaintiff's functional limitations do not meet the criteria listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, Part B. Accordingly, it is

ORDERED that plaintiff's motion for summary judgment, or in the alternative motion for judgment on the pleadings, or in the alternative, motion for remand is denied. It is further

ORDERED that defendant's motion for summary judgment is granted.