**Jermaine HARRISON, By and Through his next friend and mother, Deborah HARRISON, Plaintiff,**

v.

**Kenneth APFEL, Commissioner of the Social Security Administration, Defendant.**

No. 98–CV–6267L.

United States District Court,
W.D. New York.

Aug. 3, 1999.

Keith J. McCafferty, Monroe County Legal Assistance Corp., Legal Assistance of the Finger Lakes, Geneva, NY, for Jermaine Harrison, by and through his next friend and mother, Deborah Harrison, plaintiff.

Anne VanGraafeiland, AUSA, United States Attorney, Rochester, NY, for Kenneth Apfel, Commissioner of the Social Security Administration, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that plaintiff was not disabled, and therefore, was not entitled to disability benefits. Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c). For the reasons outlined below, the Court grants the Commissioner's motion and denies plaintiff's motion.

## PROCEDURAL BACKGROUND

Deborah Harrison, on behalf of her minor son Jermaine Harrison ("Jermaine"), applied for supplemental security income ("SSI") disability benefits on August 3, 1994. (T. 78–83).[1] The bases for the application were that Jermaine suffered from learning problems, an emotional problem, and a speech problem. (T. 86). The application was denied initially (T. 84–86), and on reconsideration. (T. 95–97). An administrative law judge ("ALJ") held a hearing in the case on February 20, 1996 (T. 29–77), and issued a decision dated

---

1. "T. ___" refers to the page of the transcript of the Administrative Record filed by the

April 22, 1996. (T. 16–20). The ALJ found that Jermaine was not eligible for SSI benefits. (T. 20). That determination became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 23, 1998. (T. 5–6). This action, commenced pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to review the Commissioner's determination followed.

## DISCUSSION

A. *The Standard of Review*

The first issue to be determined by this Court is whether the Commissioner applied the correct legal standard. *Tejada v. Apfel*, 167 F.3d 770 (2d Cir.1999); *see also Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) (holding that the court must first review the ALJ's decision for correct legal principles before applying the substantial evidence standard to uphold a finding of no disability); *see also Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984) ("[f]ailure to apply the correct legal standards is grounds for reversal").

The only other issue to be determined by the Court is whether the Commissioner's conclusions are supported by substantial evidence. *See Townley*, 748 F.2d at 112 ("It is not the function of a reviewing court to determine *de novo* whether a claimant is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding"). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Commissioner with his answer.

*The Standard for Determining Childhood Disability*

█ Under the law applicable at the time of Jermaine's hearing[2], a child under the age of 18 is entitled to disability benefits if he suffers from a "medically determinable physical or mental impairment of comparable severity" to one that would disable an adult. 42 U.S.C. § 1382c(a)(3)(A).[3] The applicable regulations[4] defined a disability of "comparable severity" as one that "so limits the child's ability to function independently, appropriately, and effectively in an age-appropriate manner that" the resulting impairments and limitations "are comparable to those which would disable an adult." 20 C.F.R. § 416.924(a). For a child such as Jermaine, between 3 and 16 years of age, the comparability of disability is measured primarily by whether the impairment substantially reduces the child's ability to "[g]row, develop, or mature physically, mentally, or emotionally and, thus, to engage in age-appropriate activities of daily living . . . in self-care, play and recreation, school and academics, community activities, vocational settings, peer relationships, or family life." 20 C.F.R. §§ 416.924(a)(2) and 416.924b(b)(3).

The pertinent regulations established a four-step procedure for evaluating child disability claims. *See id.* As the Second Circuit has explained:

> The Commissioner first considers whether the child is engaged in "substantial gainful activity." [20 C.F.R. § 416.924(b).] If the child is not engaged in such activity, the Commissioner must determine whether the child has an impairment or combination of impairments that is "severe." *Id.* If the child has a severe impairment, the Commissioner next considers whether the impairment "meets or equals in severity" any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* A determination that a child has a listed impairment that meets the durational requirements results in a finding of disability. 20 C.F.R. § 416.924(e). If the child has an unlisted but "severe" impairment, the Commissioner moves to the fourth step and conducts an "individualized functional assessment" ("IFA") to determine whether the impairment would disable an adult. 20 C.F.R. §§ 416.924(b) & (f).

*Quinones v. Chater,* 117 F.3d 29, 34 (2d Cir.1997).

Formulating an IFA for the child requires an analysis of six functional "do-

2. The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193, 110 Stat. 2105 (Aug. 22, 1996) ("PRWORA") established a new standard for child disability benefits. The new statute repealed the disability standard of "comparable severity" and terminated the use of the individualized functional assessment ("IFA"). This statute applies to this case because judicial review was pending on the date the statute was enacted. *See, e.g., Dawson v. Apfel,* 96–CV–6023, 1997 WL 716924, *2–3 (S.D.N.Y. November 17, 1997); *Hart o/b/o Thomas v. Chater,* 963 F.Supp. 835, 837 (W.D.Mo.1997); *Hulbert v. Chater,* No. 96–CV–6169, slip op. at 11 (W.D.N.Y. Dec. 12, 1996). The new standard is more stringent than that applicable when Jermaine's hearing was held, and therefore any request for benefits that was properly denied under the prior standard must necessarily be denied under the new standard. *See, e.g., Jamerson v. Chater,* 112 F.3d 1064, 1068 (9th Cir.1997); *Hulbert,* slip op. at 11–12. Despite the passage of PRWORA, the prior standard is utilized to analyze the ALJ's decision, and if supported by substantial evidence, that decision should be affirmed. *See, e.g., Jamerson,* 112 F.3d at 1066; *Hulbert,* slip op. at 12–13. Even if the ALJ's decision were not supported by substantial evidence, then the remedy would be to remand the action to the Commissioner, who would then have to apply the newer, more difficult PRWORA standard.

3. A person is "disabled" under the Act and therefore entitled to benefits, when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

4. The referenced regulations are those that were effective in early 1996.

mains"—the 'cognitive' function; the 'communicative' function; the 'motor' function; the 'social' function; the 'personal/behavioral' function; and the 'concentration' function (which requires an analysis of the child's concentration, persistence and pace in the completion of age-appropriate tasks). 20 C.F.R. § 416.924d(h)(1)–(6). Each domain is assessed separately, and, pursuant to the Commissioner's regulations, a child between the ages of 3 and 16 is deemed to be "disabled" if he (1) is impaired to a marked degree in one domain and to a moderate degree in at least one other domain; or (2) he is impaired to a moderate degree in three of the six domains. 20 C.F.R. § 416.924e(c)(2)(i)(ii). With respect to these domains, the applicable regulations provided:

> School-age children (age 6 to attainment of age 12). Children in this age group are evaluated ... [according to the following]:
>
> (1) Cognitive function, e.g., your ability to progress in learning the skills involved in reading, writing, and mathematics;
>
> (2) Communicative function (includes speech and language), e.g., your ability to communicate pragmatically (i.e., to meet your needs) and conversationally (i.e. to exchange information and ideas with peers and family or with groups such as your school classes) in a spontaneous, interactive, sustained, and intelligible manner;
>
> (3) Motor function (includes gross and fine motor skills), e.g., your ability to engage in the physical activities involved in play and physical education, appropriate to your age;
>
> (4) Social function, e.g., your ability to play alone, or with another child, or in a group; to initiate and develop friendships, to respond to your social environments through appropriate and increasingly complex interpersonal behaviors, such as empathizing with others and tolerating differences; and to relate ap-

> propriately to individuals and groups ...;
>
> (5) Personal/behavioral function, e.g., your ability to help yourself and to cooperate with others in taking care of your personal needs and safety, to respond appropriately to authority and school rules, to manifest a sense of responsibility for yourself and respect for others; to adapt to your environment; and to learn new skills;
>
> (6) Concentration, persistence, and pace, e.g., your ability to engage in an activity, such as playing or reading, and to sustain the activity for a period of time and at a pace appropriate to your age.

20 C.F.R. § 416.924d(h)(1–6).

### B. The Parties' Arguments and the Court's Findings

In this case, the ALJ determined that Jermaine was not engaged in substantial gainful activity. He also found that Jermaine is learning disabled, has speech problems, and attention deficit hyperactivity disorder ("ADHD"). The ALJ determined that separately or together Jermaine's ailments were "severe." The ALJ next determined that Jermaine's ailments "do not meet or equal the level of severity of any listing found in Appendix 1, Subpart P, Regulations No. 4." (T. 17). In performing the fourth step of the process, the IFA, the ALJ determined that Jermaine was "moderately limited" in the cognitive function, had "less than moderate limitations" in the communicative, behavioral, and concentration functions, and had no impairment in the motor function. In assessing the social function, the ALJ acknowledged that "some problems" were noted, but the ALJ made no finding of either moderate or marked limitation. (T. 17–18). Accordingly, the ALJ found that Jermaine's "impairments are not of a comparable severity to one that would cause an adult to be unable to engage in substantial gainful activity" (T. 20), and he denied plaintiff's application.

The parties do not dispute that plaintiff suffered from severe impairments involving learning disabilities, speech problems, and ADHD. The Commissioner, however, argues that such impairments do not meet or equal any impairment listed in Appendix 1, Subpart P, of the applicable regulations, and that the results of the IFA supported the ALJ's determination. In short, the Commissioner asserts that the ALJ's findings are supported by substantial evidence and must be upheld. Plaintiff disputes this and also asserts that the ALJ's determination is based upon errors of law. In particular, plaintiff contends that: (1) Jermaine's combination of impairments falls under the Impairment 112.02 for Organic Mental Disorders; (2) Jermaine has marked impairments in cognitive functioning, concentration, persistence and pace, and at least a moderate impairment in motor functioning; (3) the ALJ failed to give appropriate weight to certain evidence; and (4) material evidence, that was not available for the ALJ but was submitted to the Appeals Council prior to its denial of the request for review, exists to support plaintiff's application. The Commissioner counters that: (1) plaintiff has never before argued that he met Impairment 112.02; (2) it was plaintiff's obligation to do this at the administrative level; and (3) in any event, plaintiff did not meet that listing.

I conclude that the ALJ adhered to the appropriate analytical framework and applied the correct legal principles as articulated most recently by the Second Circuit in *Quinones v. Chater*, 117 F.3d 29, *supra*. In addition, I believe that the Commissioner's decision is supported by substantial evidence. The ALJ appears to have weighed all the relevant evidence before him, some of which was inconsistent, and arrived at a reasonable, amply supported outcome. I see no error of law. Finally, I do not think that the additional evidence necessarily alters the result.

While there may have been conflicting evidence in this case, there is sufficient evidence to support the ALJ's decision. As the Second Circuit has observed: "[w]here an administrative record supports disparate findings, [courts] must accept the ALJ's factual determinations." *Quinones v. Chater*, 117 F.3d at 36.

### 1. *Impairment 112.02*

Plaintiff now contends that Jermaine's impairments meet the requirements of Impairment 112.02—"Organic Mental Disorders." 20 C.F.R. 404, App. 1, subpart P.

The criteria for finding an Organic Mental Disorder (Impairment 112.02) is as follows:

> The required level of severity ... is met when the requirements in both A and B are satisfied.
>
> A. Medically documented persistence of at least one of the following:
>
> 1. Developmental arrest, delay or regression; or
>    ***
>
> 3. Memory impairment, either short-term ..., intermediate, or long-term ...; or
>    ***
>
> 10. Disturbance of concentration, attention, or judgment;
>
> AND
>
> B. ... for children (age 3 to attainment of age 18), resulting in at least two of the following
>
> a. Marked impairment in age-appropriate cognitive/communicative function ...; or
>
> b. Marked impairment in age-appropriate social functioning; or
>
> c. Marked impairment in personal/behavioral function ...; or
>
> d. Deficiencies of concentration, persistence, or pace....

■ In this case, plaintiff asserts that Jermaine's impairment meets criteria numbers 1, 3, and 10 of Part A of Impairment 112.02, and also the cognitive and concentration functions of the criteria of Part B of Impairment 112.02. I disagree.

Although the ALJ did not discuss Impairment 112.02 specifically, he identified the evidence that he considered pertinent to his analysis of all the Impairments. I find substantial evidence supporting his finding that Jermaine's impairments did not meet or equal any of them, including Impairment 112.02.

Although the evidence showed that Jermaine was performing only marginally in several academic areas, and had some difficulties getting along with his peers[5], such evidence does not necessarily constitute a marked impairment in the cognitive function. *See* Section 112.02(B)(2)(a). Indeed, there was some evidence to the contrary.[6] In addition, in the application to the Appeals Council, plaintiff's representative apparently abandoned the argument that plaintiff had a marked impairment in this function. (*See* June 6, 1996 Letter to Appeals Council, T. 208).

While admittedly there was some evidence that Jermaine has a short attention span and becomes easily distracted,[7] this evidence alone is insufficient to meet the requirements for finding an Organic Mental Disorder. *See* Impairment 112.02.

In short, the evidence supports a finding that Jermaine did not suffer a marked impairment in the cognitive function. See Impairment 112.02(B)(2)(a). To the extent Jermaine suffered to any degree deficiencies of concentration, persistence or pace (see Impairment 112.02(B)(2)(d)), such a finding by itself would not be enough to meet the requirements for Impairment 112.02. So too, there does not appear to have ever been any independent evidence of any organic dysfunction in this child. Thus, the requirements for finding an Organic Mental Disorder under Impairment 112.02 were not presented.

Moreover, it was not until plaintiff's opposition to the Commissioner's motion—over three years after the hearing—that plaintiff raised this argument for the first time. In a similar fashion, it does not appear that there was ever any claim at the administrative level that the child had an impairment in a motor function. Indeed, plaintiff's arguments before this Court are quite different from what they were at the administrative level. The ALJ cannot be faulted for not specifically referencing a listed impairment, such as Impairment 112.02, when plaintiff never claimed that basis for disability before the ALJ or the Appeals Council.

## 2. The Individualized Functional Assessment

The ALJ found that Jermaine was moderately limited in the cognitive function, less than moderately limited in the com-

---

5. Jermaine's first grade teacher Jennifer Baxter noted Jermaine's difficulty with conflict resolution and that he was functioning "at below grade level." (T. 114–115).

6. Jermaine's first grade pupil progress report is not particularly critical of him (T. 141), and the various other reports are rather encouraging. (T. 143–147). For example, Jermaine's physical education teacher wrote that Jermaine is a "talented individual for a boy his age." (T. 146). His art teacher notes that Jermaine shows "good creative effort." (T. 144). For the 1994–1995 academic year, Lyons' Committee on Special Education classified Jermaine as learning disabled in reading, math, and written expression, but also noted that Jermaine "has made some improvement in his social-emotional behavior...." (T. 132–133). The Committee found him to be "normal" physically. (T. 133).

One of plaintiff's teachers, Nancy Morrison, indicated that plaintiff's intellectual skills are age-appropriate, and that he "seems able to grasp concepts and discuss orally." (T. 177). Lastly, Jermaine's treating physician, Richard Endres, noted that Jermaine's IQ is "a little below average" but that his "abstracting ability [is] good." (T. 167).

7. Jermaine's second grade teacher Steven Ferguson noted Jermaine's problem listening and following directions. (T. 123–124). Jermaine's third grade pupil progress report for the first half of the year was completed by Nancy Morrison, who found Jermaine unsatisfactory in math, spelling, and social studies. (T. 190). While concerns continued about Jermaine's ability to focus on tasks, his remaining third grade progress reports delineate "some academic gains" though. (T. 191–198).

municative, behavioral, and concentration functions, and not limited in the motor function. Thus, he found that Jermaine did not suffer an impairment of comparable severity to that of a disabled adult as required by 20 C.F.R. § 416.924(f).

█ Plaintiff asserts that this finding was not supported by substantial evidence and that Jermaine suffered marked impairments in three relevant domains: the cognitive, motor, and concentration functions. See 20 C.F.R. § 416.924d(h)(1), (3), & (6). I disagree with plaintiff and find that the ALJ's decision was amply supported.

As previously noted, while there was some evidence in the record that Jermaine's cognitive functions were generally low to average[8], such a level of impairment does not rise to the level of a marked impairment for purposes of finding an SSI disability. It is the plaintiff's burden of proof to establish that the child meets the requisite tests.

With respect to the concentration function, while there was some evidence that Jermaine has a short attention span and becomes easily distracted[9], other evidence suggests that Jermaine can function by himself and do things requiring attention and concentration.[10] Accordingly, the evidence supports a finding that Jermaine's

impairment in the concentration domain was "less than moderate." Even if this impairment were considered "moderate" as opposed to "less than moderate," that alone would be insufficient to change the outcome of the IFA. See 20 C.F.R. § 416.924e(c)(2)(i), (ii).

Lastly, regarding the motor function, plaintiff concedes that this argument was never raised at the administrative level. (See Plaintiff's memorandum, p. 23, nte. 4). Indeed, plaintiff's representative neither argued any marked impairment in the motor function nor even any moderate impairment in that function. As with the concentration function, even if any impairment in the motor function was deemed "moderate," that alone would be insufficient to change the outcome of the IFA. See 20 C.F.R. § 416.924e(c)(2)(i), (ii).

Thus, I find the ALJ's decision that Jermaine did not suffer an impairment of comparable severity to an impairment that would disable an adult, to be substantially supported by the evidence. See 20 C.F.R. § 416.924(f).

3. *Weight of Evidence*

Somewhat surprisingly, plaintiff asserts that by placing "great emphasis" on a report by Dr. Richard Endres, the ALJ failed to give sufficient weight to the observations of Jermaine's teachers and

---

8. Lyons Central School psychologist Jessica Edgington evaluated Jermaine on February 3, 1994. Jermaine was measured to have a verbal IQ of 88, a performance IQ of 95, and a full-scale IQ of 90. She concluded that Jermaine was functioning within "the low average range in terms of verbal cognitive capabilities, and within the average range in terms of non-verbal and general cognitive capabilities." She also noted a concern of possible attention deficit disorder. (T. 152–154).

9. In November 1994, Jermaine was seen by Edna Carter Young, Chief of Speech Pathology and Associate Professor of Pediatrics at the University of Rochester. (T. 157–160). In her speech/language evaluation, Dr. Young found Jermaine initially cooperative but that it was very difficult for him to focus his attention to tasks. She found his behavior consistent with attention deficit disorder. Based on

his performance on a variety of tests administered, she found a mild delay in listening comprehension, average vocabulary skills but a deficiency in language development (strength in recognition of word meanings and weakness in processing information and following directions). In short, she found mixed scores, and diagnosed Jermaine with developmental language disorder, and auditory perceptual disorder. In December 1994, Lee Rachiele, a psychologist, diagnosed Jermaine with ADHD, mild.

10. In December 1994, Dr. Rachiele issued a psychiatric exam report, in which she stated that Jermaine "gives the impression of being able to take care of his personal needs and relate adequately with his peers." She found Jermaine's speech clear. (T. 155–156). *See also* note 6, *supra.*

mother. (Plaintiff's memorandum, pp. 15–16).

■ I initially note that Dr. Endres was plaintiff's treating physician, a fact which plaintiff concedes. (*See* Plaintiff's memorandum, p. 6). It has long been recognized that the opinion of a treating physician is given controlling weight in claims for Social Security disability benefits if it is well supported by medical findings and not inconsistent with other substantial evidence. *Rosa v. Callahan,* 168 F.3d 72, 78–79 (2d Cir.1999); *see also Clark v. Commissioner,* 143 F.3d 115, 118 (2d Cir.1998) (citing 20 C.F.R. § 404.1527(d)(2)[11]). Plaintiff's objection to the ALJ's reliance on a treating physician is surprising because an ALJ *should* give considerable weight to a treating physician's opinion.

Secondly, even if the ALJ placed "great emphasis" on any report by Jermaine's treating physician, as plaintiff alleges, it does not necessarily follow that he did so to the exclusion of the observations of Jermaine's teachers or mother. In fact, the ALJ referenced the observations of Jermaine's teachers and mother in the decision in some detail. (*See* T. 16–20). While it appears that the ALJ may have discredited Jermaine's mother's testimony concerning certain aspects of her son's alleged disability, such a finding need not necessarily be disturbed. *See Tejada v. Apfel, supra,* 167 F.3d at 776; *Pascariello v. Heckler,* 621 F.Supp. 1032, 1036 (S.D.N.Y.1985) (noting that after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility, the ALJ, in resolving conflicting evidence, may decide to discredit the claimant's subjective estimation of the degree of impairment). In short, the ALJ did not ignore the evidence cited by plaintiff, but found, after analyzing the conflicting evidence in the record, that plaintiff was not disabled under the IFA analysis.

11. The Regulations state: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clini-

The ALJ's decision is well supported with numerous references to the record, including medical evidence and testimony. I find no meaningful gaps in the ALJ's reasoning. Thus, I find no error of law.

### 4. Post–Hearing Evaluations by Genesee Hospital Development Unit

In mid–1996, after the hearing was held and the ALJ rendered his decision, Jermaine was seen and evaluated by the Genesee Hospital Development Unit ("the Development Unit"). (T. 211–228). Plaintiff suggests that had the Development Unit's findings been available for review by the ALJ, he "may well" have arrived at a different conclusion. Plaintiff also asserts that this evidence, which is summarized in the following paragraph, supports reversal or remand.

In the summary of her pediatric neurodevelopmental evaluation, Dr. Miriam Halpern found Jermaine to have been in good health with normal development medically. Dr. Halpern found Jermaine to be "a happy youngster who is quite impulsive" behaviorally, but her neurological evaluation revealed difficulty with motor coordination and balance. In the area of developmental screening, she found Jermaine to be "severely impaired in all academic areas." Speech language pathologist Patricia Albrecht–Licciardi evaluated Jermaine on July 3, 1996. (T. 213–218). While she noted some vulnerabilities in automaticity and accuracy of retrieval of information, she also found an adequate lexical base and appropriate comprehension of the rules of grammar and syntax. Educational consultant Rosemary Hodges issued an educational assessment report on May 23, 1996 (T. 219–224), and found that Jermaine's attention was "not a significant factor" in her encounter with him. Among other things, Ms. Hodges noted "significant learning difficulties." Lastly, psy-

cal and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 1527(d)(2).

chologist Mary Chiariello evaluated Jermaine on July 9, 1996. (T. 225–228). Dr. Chiariello diagnosed Jermaine with oppositional defiant disorder, and ADHD.

Notably, however, all of this evidence was reviewed by the Appeals Council, which determined that such additional evidence did not provide "a basis for changing the Administrative Law Judge's decision." (T. 5). Moreover, while these additional records discuss in detail the results of certain tests that were given after the hearing and after the ALJ's decision, some of the same tests had been given before the hearing, and were a part of the record that was considered by the ALJ. These additional records do not delineate any substantially different diagnoses or opinions than earlier records. As such, I find that the ALJ's decision remains supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt.# 5) is granted, and plaintiff's cross-motion for judgment on the pleadings (Dkt.# 10) is denied. The complaint is dismissed.

IT IS SO ORDERED.